BILLIE RAY ADAMS, WILLIAM E. ADAMS *v*. STATE OF INDIANA.

[No. 473S72. Filed July 25, 1974.]

*Barrie C. Tremper,* Public Defender of Allen County, *Ferdinand Samper, Sr.,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellants were charged by a two count indictment with the crime of first degree murder: Count 1, killing of a person in the perpetration of a felony; Count 2, premeditated murder. A jury trial resulted in a verdict of guilty on both counts against each of the appellants.

The record reveals the following evidence:

On the morning of February 24, 1972, two men, armed with pistols and wearing ski masks, entered the American Fletcher National Bank in Cumberland, Indiana. One of the men, later identified as William E. Adams, disarmed the bank guard. The customers in the bank and the bank personnel were ordered to lie on the floor. The robbers then forced the assistant manager of the bank to open the safe. Money was taken from the safe and from each of the tellers' cages.

While the robbery was in progress, Marion County Deputy Sheriff, Floyd Settles, arrived at the bank in answer to an alarm. As he entered the bank, he was caught in a cross fire between the two robbers. Later that day Deputy Settles died as a result of the wounds received during the shooting.

James Taylor, a friend of appellants, testified that between 11:00 and 11:30 A.M. on the day of the robbery Billie Ray Adams and William E. Adams came to his house with a bag of money and two pistols. Billie Ray Adams said that he had shot a man and wanted the keys to Taylor's truck, which he received.

Before leaving, Billie Ray Adams put the bag of money in the trunk of his car.

Royce Richey, brother-in-law to William E. Adams, testified that on the day of the robbery, William E. Adams and Billie Ray Adams came to his house. One of them stated that they had "wasted" a man. Billie Ray Adams said they had robbed a bank and shot a man there. Later, William E. Adms returned and showed Richey a corduroy bundle. Richey then drove William E. Adams around and when they crossed White River at the Raymond Street bridge in Indianapolis, William

E. Adams threw the corduroy bundle into the river. This bundle was later recovered by police and was found to contain two weapons of the same type as used in the robbery.

William E. Adams was apprehended on the day following the robbery, and Billie Ray Adams was apprehended three days later, on February 28.

After the arrest of the appellants, Special Agent Keenan of the Federal Bureau of Investigation and other officers went to the residence of Royce Richey, who took them to a garage on the property and told them where some of the money was buried. A gray box was found containing a loaded pistol and $5,520, including 74 of the 75 one dollar bills taken in the robbery, the serial numbers of which had been recorded.

After being given his *Miranda* warnings, William E. Adams gave the FBI a signed statement confessing his part of the robbery. At the trial he admitted giving the confession and stated that the matters therein were true except for some of the post-robbery evidence. He refused to identify his partner in the robbery, but claimed that Billie Ray Adams was not the one.

Appellants first claim the court erred in overruling their motion to quash Count 1 of the indictment. It is their argument that Count 1 purports to charge a felony-murder based upon ACTS 1971, P.L. 454, § 1, p. 2093, which reads as follows:

"Sec. 1. Whoever purposely and with premeditated malice, or by the unlawful and malicious use or detonation of any explosive, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree and on conviction shall suffer death or be imprisoned in the state prison during life."

They cite the case of *Loftus* v. *State* (1944), 222 Ind. 139, 52 N.E.2d 488, for the proposition that the felony-murder statute does not include the specific crime of bank robbery.

They, therefore, reason that the conviction of the appellants under the charge of killing a person in the commission of a felony is a nullity. However, in *Loftus* the indictment specifically charged the commission of a bank robbery and the felonious killing of a person during such bank robbery. The court pointed out there was no charge of either first degree or second degree murder or voluntary manslaughter, but the charging affidavit was only sufficient to charge involuntary manslaughter.

Such is not the situation in the case at bar. In the case at bar the appellants were not charged with bank robbery, but were charged with robbery as defined by IC 35-13-4-6, BURNS IND. ANN. STAT., 1956 Repl., § 10-4101, which reads as follows:

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten [10] years nor more than twenty-five [25] years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period. Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack, or any other deadly or dangerous weapon or instrument while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life."

In the situation at bar, the appellants are alleged to have committed acts which constituted a violation of more than one criminal statute. Thus, the State had the option of prosecuting the appellants under any or all of the applicable statutes. *Kindred* v. *State* (1970), 254 Ind. 127, 258 N.E.2d 411, 21 Ind. Dec. 325; *Von Hauger* v. *State* (1969), 252 Ind. 619, 251 N.E.2d 116, 18 Ind. Dec. 641.

We, therefore, hold the trial court did not err in overruling appellants' motion to quash Count 1 of the indictment.

Appellants next claim the trial court erred when it allowed Mr. Hicks and Mr. Taylor to testify to hearsay, over their objection.

Mr. Hicks, who was one of the persons present at the time of the robbery, testified that one of the robbers stated, "This is a hold-up. I'm not kidding. Get behind the cages."

It is entirely proper for a witness who is describing the acts of the perpetrators of the crime to testify as to explanatory words uttered by the perpetrators of the crime which accompany and give character to the transaction. Such testimony is not considered hearsay, but is admitted as part of the *res gestae* of the alleged crime. C. McCORMICK, LAW OF EVIDENCE § 249 at 589 (2d ed. 1972).

Taylor testified as to conversations he had with Billie Ray Adams in the presence of William E. Adams. This testimony concerned the presence of Billie Ray Adams' automobile at Taylor's house and a statement by Billie Ray Adams that he had removed the money and the guns from the car and that the guns had been thrown in White River. This conversation as related by Taylor contained no reference to William E. Adams. Further, the court admonished the jury that the testimony was not to be considered as evidence against William E. Adams. There was no motion for a mistrial by the appellants nor was there any indication by them that the admonition of the trial court was insufficient. We hold the testimony of Taylor was admissible against Billie Ray Adams as being a declaration against interest, and that it was properly received by the trial court. 1 EWBANK'S CRIMINAL LAW (Symmes Ed. 1956), § 390.

The appellants next claim the trial court erred in allowing John Farrington to testify as to the "bait money list" (this is in reference to the one dollar bills, the serial numbers of which had been pre-recorded), in that Farrington did not prepare the list and had no first hand knowledge of its contents. An examination of this record discloses that John Farrington was an employee of American Fletcher National Bank, and that immediately after the robbery he audited the Cumberland Branch to determine the monetary loss sustained

in the robbery. Farrington made no reference to the "bait money list" in his testimony. The bank employee who testified concerning the "bait money list" was Michael Hicks; however, if we apply appellants' argument to the Hicks testimony, we find that he prepared two of the three lists involved and verified the third by checking the serial numbers with the dollar bills. We find Michael Hicks' testimony to be his first hand information of that particular factual situation and, therefore, entirely proper. The trial court did not err in permitting such testimony.

Appellants next claim the trial court erred in allowing the State to impeach State's witness, Royce Richey. Richey is a brother-in-law to William E. Adams. He testified before the Marion County Grand Jury prior to indictment of the appellants. At the trial he claimed to have forgotten material conversations with the appellants subsequent to the robbery in which they told him about the robbery and the shooting of Deputy Settles. In order to refresh Richey's memory the prosecuting attorney asked him if he had been asked certain questions and had given certain answers before the grand jury. Out of the presence of the jury, Richey testified that an anonymous caller threatened his life if he testified against the appellants, and that he did not want to testify. It is appellants' contention that Richey's prior statements were inadmissible as hearsay. They are in error in this regard. Statutory law in Indiana specifically permits a party to contradict his own witness by showing that he had made prior inconsistent statements. IC 34-1-14-15, BURNS IND. ANN. STAT., 1968 Repl., § 2-1726.

We, therefore, hold the trial court did not err in permitting the State to impeach the Witness Richey.

Appellants next claim that the arrest of William E. Adams was illegal in that it was without probable cause, and that illegal procedures were used in arresting William E.  Adams. If we would assume for the purposes of argument that appellants' contentions are true, they

are immaterial in this case. There is no claim that evidence was acquired in connection with an illegal arrest and thus should have been suppressed. This Court has held that a valid conviction may rest upon an invalid arrest. *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576, 29 Ind. Dec. 302; *Wells* v. *State* (1971), 256 Ind. 161, 267 N.E.2d 371, 25 Ind. Dec. 27.

The only evidence produced by a search incident to the arrest of William E. Adams was a pistol. Ballistics tests of this pistol showed that it was not one used in the robbery.

We would further observe that William E. Adams confessed in open court to taking part in the robbery and shooting. Thus, any question concerning a prior arrest is of no moment at this time. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705.

Appellants next contend the trial court erred in overruling their motion to suppress evidence obtained as a result of a search of Billie Ray Adams' automobile, and the probable cause affidavit for the search warrant was insufficient. With this we do not agree.

The affidavit recited the facts of the bank robbery, Billie Ray Adams' connection therewith, his ownership of the automobile which was to be the subject of the search and a statement that such automobile was believed to contain the money taken in the robbery and the weapons used in the robbery. The affidavit contained information that the automobile was at the home of James I. Taylor and that Billie Ray Adams had shown the guns and the money to Taylor and told him they had robbed a bank and killed a man. Under these circumstances the Commissioner for the United States District Court for the Southern District of Indiana had ample information to support the issuance of the search warrant. However, if we would assume for the sake of argument that the search warrant was improperly issued, it is of no moment to the issues in this case for the record reveals that no items taken from the car were estab-

lished to have any connection with the robbery. The vehicle itself was identified as the get away car in the robbery, but was not itself a subject of the search warrant. There was an abundance of evidence independent of the search to establish the fact that the car had been used in the robbery. This Court has held that the admission of improper evidence which is cumulative of other evidence is not reversible error. *Mitchell v. State* (1972), 259 Ind. 418, 287 N.E.2d 860, 33 Ind. Dec. 161.

We, therefore, hold: 1. The warrant issued by the United States Commissioner was valid. 2. Any evidence which might be considered to have been obtained by the use of such warrant was merely cumulative and repetitious of other evidence and thus constituted no reversible error in this case.

Appellants next claim the trial court erred in allowing State's witness, Fred Leete, to testify concerning State's Exhibit 66, the same being a .38 caliber Colt revolver. Leete testified that State's Exhibit 66 was the pistol which he recovered wrapped in corduroy from White River in Indianapolis. He stated that the pistol was the same model and was rusted in the same manner as the one which he had retrieved from the river, although he had not marked the pistol at the time it was recovered. Without deciding the sufficiency of the testimony of Leete as to the identification of State's Exhibit 66, we would observe that any possible error occurring at that time was cured later by the testimony of Special Agent Wyland Archer; that he could identify the pistol for the reason at the time of its recovery he had marked it, and that he could now identify it as being the corduroy wrapped pistol recovered from White River.

We, therefore, hold that State's Exhibit 66 was, in fact, properly identified and thus properly received in evidence.

Appellants next claim that the trial court erred in overruling their motion for a directed verdict to Count 1 of the indictment at the close of the State's case in chief. From the facts as above recited, we hold that there was ample evidence

from which the jury could conclude that the appellants killed Deputy Settles in the perpetration of a robbery.

We, therefore, hold the trial court did not err in overruling appellants' motion for a directed verdict as to Count 1 of the indictment.

Appellants next claim the trial court erred in refusing to allow Billie Ray Adams to make the final argument to the jury. It is contended that the language found in Article 1, § 13 of the Constitution of Indiana guarantees the right of a defendant to be heard by himself and counsel. Appellants also direct the court to IC 35-1-35-1, BURNS IND. ANN. STAT., 1956 Repl., § 9-1805 which reads as follows:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

"First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it, and the *defendant* may then state his defense and briefly the evidence he expects to offer in support thereof.

"Second. The prosecuting attorney shall then offer the evidence in support of the prosecution and the *defendant* shall then offer the evidence in support of his defense.

"Third. The parties may then respectively offer rebutting evidence only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case.

"Fourth. When the evidence is concluded the prosecuting attorney and the *defendant or his counsel* may, by agreement in open court, submit the case to the court or jury trying the same, without argument. But if the case be not so submitted without argument the prosecuting attorney shall have the opening and closing of the argument; but he shall disclose in the opening all the points relied on in the case and if in the closing he refers to any new point or fact not disclosed in the opening the *defendant or his counsel* shall have the right of replying thereto, which reply shall close the argument of the case. If the prosecuting attorney shall refuse to open the argument, the *defendant or his counsel* may then argue the case. If the *defendant or his counsel* refuse to argue the case after the prosecuting attorney has made his opening argument, that shall be the only argument allowed in the case.

"Fifth. The court must then charge the jury, which charge, upon the request of the prosecuting attorney, the *defendant or his counsel* made at any time before the commencement of the argument, shall be in writing and the instructions therein contained numbered and signed by the court. In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict. If he present the facts of the case he must inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law.

"Sixth. If the prosecuting attorney, the *defendant or his counsel* desire special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking them, and delivered to the court before the commencement of the argument. Such charge or charges of the court, or any special instructions, when so written and given by the court, shall in no case be orally qualified, modified or in any manner orally explained to the jury by the court. [Acts 1905, ch. 169, § 260, p. 584; 1909, ch. 96, § 1, p. 257; 1927, ch. 132, § 14, p. 411.]" emphasis added.[1]

In the case at bar, we are dealing with the rule of law which was stated in *United States* v. *Catino* (2d Cir. 1968), 403 F. 2d 491, 497. In that case the Court stated:

"The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial. . . . Once the trial has begun with the defendant represented by counsel, however, his right thereafter to discharge his lawyer and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance."

In oral argument before this Court, counsel for the appellants urged that by denying the appellant, Billie Ray Adams, the opportunity to address the jury, the court forever silenced him, and that the jury would never hear his explanation of the facts.

---

1. Subsection Sixth has been superseded by IND. RULES OF PROC., Rule CR. 8.

In reviewing the facts presented to the trial court in this case, we would point out that the appellants were represented by competent counsel during their entire trial. They had the opportunity to testify in their own behalf or they had the privilege of electing not to testify. Had the trial court determined that Billie Ray Adams be allowed to address the jury in final argument, it would have been entirely improper for him to have given his version of the occurrences or in any manner have given testimony of facts concerning the case. Such information is only proper coming from a properly sworn witness in the case. In final argument, whether the same be by counsel or by defendant, it is only proper to comment upon the evidence which has been given from the witness stand and presented by exhibits properly admitted into evidence. It was entirely proper for the trial court to determine that such a summary of the evidence could best be accomplished by the competent counsel representing the appellants. It was for the trial court to determine if such counsel were in as good or better position to properly summarize the evidence presented in the case than was the appellant, Billie Ray Adams.

We, therefore, hold the trial court did not err in ruling that Billie Ray Adams was not to make final argument to the jury. See also *McDowell* v. *State* (1947), 225 Ind. 495, 76 N.E.2d 249.

The appellants next contend that no *mens rea* to the robbery was shown in that neither of them personally knew the identity of the Bank Manager, Kenneth Herndon, and that, therefore, they could have had no specific intent to take money from him. This argument is hardly worthy of comment. However, the case of *Smith* v. *State* (1969), 252 Ind. 148, 246 N.E.2d 765, 17 Ind. Dec. 276, is dispositive of this argument. In that case the Court stated that entering a business with a gun, forcing the employees to lie on the floor, and taking items from the store is sufficient to sustain a conviction for robbery.

We, therefore, hold that it was not necessary for the appellants to personally know the bank manager by name in order to form the intent to commit a robbery.

Lastly, the appellants assert the verdict of the jury is not supported by sufficient evidence and is, therefore, contrary to law. From the facts above recited, we hold there was sufficient evidence to support the verdict of the jury, and that the verdict is not contrary to law.

The decision of the trial court is affirmed.

Arterburn, C.J., DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 314 N.E.2d 53.