Jesse James POUNDS, Frederick Kendrick, Appellants,

v.

STATE of Indiana, Appellee.

No. 981S251.

Supreme Court of Indiana.

Jan. 21, 1983.

Kenneth T. Roberts, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-appellants, Jesse Pounds and Frederick Kendrick, were convicted of Confinement, Ind.Code § 35–42–3–3 (Burns Supp.1982), and Rape, Ind.Code § 35–42–4–1 (Burns Repl.1979), at the conclusion of a jury trial in Marion Superior Court on March 19, 1981. Both men were given ten (10) years imprisonment for the confinement and thirty-five (35) years imprisonment for the rape, sentences to run concurrently. They now appeal.

Four issues are raised on appeal, concerning: 1) whether it was reversible error to deny the defendants' motion *in limine;* 2) whether reversible error occurred when defendant Pounds was cross-examined concerning a prior inconsistent statement; 3) whether the trial court erred in allowing the State to amend its information at the conclusion of its case-in-chief; and, 4) whether sufficient evidence was presented to convict the defendants.

The evidence most favorable to the State reveals that about two a.m., on July 13, 1980, the defendants, Jesse Pounds and Frederick Kendrick, along with Kendrick's brother, David, stopped at the 500 Liquor Store in Indianapolis. The victim, a clerk in the liquor store, recognized Kendrick as a fellow passenger on a bus to the IUPUI campus. Kendrick asked the victim if she needed a ride to her home. She said that she did and rode with them to her home. When they arrived at the victim's residence, Kendrick wanted the victim's phone number and she went into her apartment to get a pencil while the three men waited in the car for her return. When the victim returned to the car with a pencil, Kendrick accused her of stealing his wallet. Kendrick drew a pistol and grabbed the victim by her arm. She offered to let Kendrick search her apartment and Kendrick and the victim entered the apartment for that purpose. The victim shared the apartment with another woman and two female friends were in the apartment baby-sitting the roommate's child. One of these babysitters testified at trial. She said she saw the victim come into the apartment the first time alone and the second time with a man the babysitter could not identify because the only light in the apartment came from the television. They went into the bathroom where Kendrick threatened and battered the victim. The victim suggested they all go back to the liquor store to look for the wallet. The victim and Kendrick left the apartment and all of them drove back to the liquor store. The babysitter testified she saw through a window the victim being pulled forcefully into the car. They were unable to find the wallet at the liquor store and the three men later took the victim to a secluded area near Riverside Drive. The woman said both Kendrick and Pounds were holding pistols. They continued to accuse her of stealing Kendrick's wallet and beat her in the face and head, threatening to shoot her with their guns. They then took her into a wooded area and Pounds and Frederick Kendrick raped her. David Kendrick did not rape her. All four returned to the automobile and, while driving around, David Kendrick took a table fork he found on the floor of the car and poked her in the arms with it. He threatened to poke her eyes out with the fork. David then attempted to choke her with a belt. The victim was subsequently released near her apartment. David was originally charged along with Frederick Kendrick and Pounds but his case was transferred to juvenile court and this trial involved only Pounds and Frederick Kendrick. Both defendants admitted they had sexual intercourse with the victim that evening but each claimed that the victim consented to it.

I

Counsel for the defendants admits confusion regarding the state of the record on

Issue I. Apparently Defendants are complaining because the trial court refused to suppress evidence about additional offenses committed by David Kendrick with which defendants Pounds and Frederick Kendrick were not charged. The only evidence in the record of this issue having been raised before the trial court is an oral motion *in limine* filed by Defendants, asking that the State be prohibited from showing any activity of David Kendrick with relation to any offenses he committed since he was not being charged and tried in criminal court with these defendants. The trial court denied such motion *in limine*.

 Defendants cannot claim error on appeal for this issue because they have waived any error in its admission by failing to raise a timely and specific objection at trial. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162, 1165; *Lock v. State,* (1980) Ind., 403 N.E.2d 1360, 1367. Even absent this waiver, we fail to see any error in admitting the evidence. The record shows that David Kendrick was present and took an active part in the activities surrounding the rape and confinement of the victim. He beat the victim, immediately before and after she was raped by the two defendants, and while she was still being confined by all of them against her will. These acts of David Kendrick were therefore a part of the same transaction and substantially contemporaneous with the crimes of rape and confinement committed by defendants Frederick Kendrick and Pounds. As such, evidence of these acts was admissible at trial. *Gross v. State,* (1977) 267 Ind. 405, 370 N.E.2d 885. No error was committed by the trial court in this regard.

## II

 On direct examination, defendant Pounds testified that he did, in fact, have sexual intercourse with the victim on the occasion at issue but that the victim had consented to it. On cross-examination the following exchange took place:

"Q. That's not the story you told all along, is it, Mr. Pounds?

MR. RITTER: Objection, Your Honor. He's . . . .

COURT: All right, objection will be sustained to the form of the question.

Q. Did you tell a different story at some time in the past, Mr. Pounds?

A. No.

Q. You never indicated that you had observed Frederick Kendrick and David Kendrick rape [the victim], you never said that?

A. No.

Q. Do you know—do you remember having a conversation with Marion County Sheriff's Deputy David Lewis?"

At this point defendant's counsel objected and asked that the jury be excused so that he might make a motion to the court. The jury was excused and, outside of its presence, Defendant moved for a mistrial. Defendant objected and moved for a mistrial because the conversation with Deputy Sheriff David Lewis, referred to in the cross-examination, took place during a polygraph examination administered by Lewis. The State pointed out that it had no intention of putting into evidence the fact that a polygraph had been taken of defendant Pounds and merely was laying a foundation to ask the defendant whether he had made a contrary statement at a previous time to the Deputy Sheriff. The trial court finally overruled the objection and denied the motion for mistrial. The subject was pursued no further by the State and Officer Lewis was not called in rebuttal.

Defendants now contend that some inference was given to the jury that a polygraph examination was given to this defendant by reason of the question set out above regarding a conversation with Deputy Sheriff Lewis. We fail to see how this inference could be drawn by the jury. The polygraph examination was never mentioned before the jury and there is not even an inference here that Deputy Lewis would be recognized as one giving polygraph examinations so that the mere mention of his name would not imply that a polygraph examination took place. No claim is made by defendant Pounds that such is the case. Defendant Pounds was simply asked if he had made a

prior inconsistent statement and he said that he had not. The subject was not pursued further. The defendant has not met his burden of showing prejudice in this alleged error. *Flewallen v. State,* (1977) 267 Ind. 90, 368 N.E.2d 239.

### III

██ On Wednesday, March 18, 1981, the State rested. Before the jury was called on Thursday, March 19, 1981, the State moved to amend, by interlineation, Count II of the indictment which charged the use of a deadly weapon by the defendants, to change the deadly weapon used from a knife to that of a handgun in the case of both Kendrick and Pounds. Appellants now claim that this was a material change in the informations, that they were misled by the allegations of the knife and that the court committed reversible error by permitting the material change at this point in the trial. The State pointed out that in the original informations filed against Jesse Pounds and the two Kendricks, it was alleged that the weapons used were handguns. Later, when the informations were typed for purposes of consolidating the three causes, a typographical error was made and the word "knife" instead of "handgun" was inserted. For some reason this was overlooked and proceeded to trial in that manner. The State pointed out to the court, however, that all of the discovery furnished to the defense alleged a handgun, all of the proof and all of the statements made by the victim referred to the use of a handgun and the use of a knife was never mentioned. Nothing in discovery referred to a knife and the only weapons ever discovered or discussed were the handguns and the fork with which David Kendrick jabbed the victim. The trial court found that Defendants had not been misled by the recitation of a knife in the informations and that no material change was being made by allowing the amendment since the charge was of forcible rape and the change referred only to the type of weapon used to threaten and coerce the victim. The judge found that all of the discovery and all of the evidence before the parties had indicated that handguns were allegedly used and no prejudice attached to the defendants by allowing the statements.

The trial court's ruling and the State's position is based on Ind.Code § 35–3.1–1–5 (Burns Repl.1979) (now repealed) that permits an amendment of the information at any time if the amendment is immaterial and does not affect the substantial rights of the defendant. *Highsaw v. State,* (1978) 269 Ind. 458, 381 N.E.2d 470. Defendants did not contend in the trial court nor here, that they were misled into thinking they would be required to defend against a charge involving a knife. It is apparent that all parties knew throughout the trial that the alleged weapons were handguns and the cause was tried and defended in that manner. Defendant's only claim was a right to proceed in the trial, thinking the State was bringing a spurious charge which they intended to raise in the closing argument to the jury. This statement was made by the defense at the time the court ordered the amendment and had not been raised by Defendants at any time prior to that moment. When the evidence was offered during the trial by the victim, and in all other manners of presenting evidence, no objection was ever made by the defendants to the admission of evidence showing the use of handguns in the commission of the rape. Under all of these circumstances, it does not appear that the defendants were misled in presenting their defenses to the shared crimes and, in fact, defended the case on the basis of the use of handguns, obviously well aware of the state of the record and the typographical error made in the charges. We therefore see no reversible error on this issue. *Walker v. State,* (1980) Ind., 409 N.E.2d 626; *Highsaw, supra.*

### IV

The defendants contend that the verdict of the jury is not supported by sufficient evidence as to either of the counts of confinement or rape and such verdicts are contrary to the evidence and to the law. Defendants contend that because of such in-

sufficiency, the court erred in refusing to grant Defendants' Motion for a Directed Verdict and in failing to set aside the verdict of the jury as contrary to the evidence; in not setting aside the verdict of the jury as being based on insufficient evidence; in overruling defendants' Motion for Discharge; and in not requiring the State to satisfy the burden of proving guilt beyond a reasonable doubt.

In judging the sufficiency of the evidence in any of the matters in which it is raised by Defendants, this Court will not weigh the evidence nor judge the credibility of witnesses. Rather, when viewing only the evidence most favorable to the State and reasonable inferences drawn therefrom, if there is substantial evidence of probative value as to every element of the crime charged, the conviction will not be set aside. *Henderson v. State,* (1980) Ind., 403 N.E.2d 1088. Evidence will not be held insufficient merely because the testimony of the victim is uncorroborated by other witnesses. *Calbert v. State,* (1981) Ind., 418 N.E.2d 1158.

Here the victim testified that she was taken forcefully and at gunpoint by these three men to various places and that she was forced to perform sexual intercourse with these two defendants. Medical testimony presented by the State revealed the presence of sperm in vaginal smears taken of the victim. Medical testimony also revealed the presence of bruises on the face and head of the victim as well as chips on her front teeth. An examining physician also testified there were puncture marks on her arms. There was, therefore, more than sufficient evidence for the jury to find or infer that both defendants had committed the crimes of confinement and forcible rape beyond a reasonable doubt.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.