**Doveon TERRY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 583S194.**

Supreme Court of Indiana.

Jan. 4, 1984.

Richard J. Conroy, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Doveon Terry was convicted by a jury in the Lake Superior Court of felony murder, Ind.Code § 35–42–1–1(2) (Burns 1979). He subsequently was sentenced to fifty years imprisonment. Appellant now directly appeals and raises the following three issues for our review:

1. whether there was sufficient evidence of probative value to support Appellant's conviction;

2. whether the trial court erred by allowing Appellant's co-defendant to introduce evidence that Appellant had recently been confined in the Indiana Boy's School; and

3. whether the trial court erred by denying Appellant's motion for severance from the case of his co-defendant.

The facts adduced during trial show that Lee Richardson, manager of the Galaxy Lounge in Gary, observed Appellant and Milton Anderson standing in the lobby of the Galaxy at approximately 8 p.m. on February 22, 1982. Richardson, already familiar with Appellant, told Appellant and Anderson to vacate the lobby which they did. Shortly thereafter, Richardson heard a scream and, looking out a front window, saw Anderson pulling at a lady and her handbag. The lady later was identified as seventy-year-old Lucille Gray. The area in front of the Galaxy was well-lighted and Richardson observed that Anderson held a knife as he attempted to grab Mrs. Gray's handbag. He also observed that Mrs. Gray was struggling and had blood on her nose. Richardson called the police. Pamyre Exantus and Sandy Emerson were standing at the street corner by the Galaxy waiting for the traffic light to change when they noticed Mrs. Gray attempting to ward off her attackers. Exantus and Emerson observed

that Anderson was slashing at Mrs. Gray with a knife. When Exantus reached the alley that the men pushed Mrs. Gray into, the men were gone. Mrs. Gray had blood on her hands and nose, and cried: "two got me, they got my purse." Although the police and an ambulance quickly arrived, Mrs. Gray soon died from internal bleeding due to the stab wounds to her heart and lungs. Police officers proceeded to Appellant's residence located approximately one block from the Galaxy where they found both suspects together. When Anderson was searched, a knife covered with human blood stains was found in his pocket. Both Appellant and Anderson had scratches on their faces.

## I

▮▮ Appellant was acquitted of murder but was convicted of felony murder in the instant case. Appellant now argues that there was insufficient evidence to support his conviction. With regard to sufficiency of the evidence questions, it is well-settled that this Court will neither reweigh the evidence nor determine the credibility of witnesses. If there is substantial evidence to support the jury's conclusion that Appellant was guilty beyond a reasonable doubt, the jury's verdict will not be disturbed. *Oatts v. State*, (1982) Ind., 437 N.E.2d 463, *reh. denied; Gatewood v. State*, (1982) Ind., 430 N.E.2d 781. Although the jury apparently found that Appellant's co-defendant, Milton Anderson, actually inflicted the fatal knife wounds upon Mrs. Gray, the evidence clearly supports the jury in finding that Appellant actively participated in the robbery and murderous attack upon Mrs. Gray. Specifically, the evidence shows that both Appellant and Anderson were observed together inside the Galaxy Lounge immediately before the attack which took place just outside the Lounge, both were seen together attacking Mrs. Gray and both were apprehended together in Appellant's residence shortly after the attack. Our law is clear that a person who aids another person to commit an offense commits that offense. See Ind. Code § 35–41–2–4 (Burns 1979); *Rogers v.*

*State,* (1974) 262 Ind. 315, 315 N.E.2d 707. Reviewing the evidence in the instant case, we find more than sufficient evidence of probative value to justify the jury's verdict.

## II

At the close of the State's case-in-chief, co-defendant Milton Anderson, by counsel, informed the trial court that he intended to introduce evidence of several statements made by Appellant to the police immediately after Appellant's arrest. Anderson specifically planned to testify that shortly after Appellant was arrested, Appellant made three separate statements to Sergeant David Wade to the effect: "I wouldn't do nothing like that. I just got out of Boy's School." Appellant objected to the proposed admission of Anderson's testimony and moved for a severance claiming that the proposed testimony would unduly prejudice his case. The trial court denied Appellant's motion and admitted the evidence over Appellant's continuing objection. Anderson therefore was permitted to testify that on three occasions immediately following Appellant's arrest, he heard Appellant tell Officer Wade that Appellant could not have committed any crimes since Appellant recently had been released from the Boy's School. Sergeant Wade also was allowed to testify that Appellant voluntarily and without solicitation stated that "he had just gotten out of Boy's School."

▮▮ The State now contends that the trial court did not commit reversible error by admitting evidence of the statements Appellant made immediately following his arrest inasmuch as said statements were part of the instant crime's *res gestae*. We agree. As Appellant argues, evidence of a defendant's conduct unrelated to the charged offense is generally inadmissible to prove guilt. When there are acts near in time and place to the charged crime which complete the story of that crime, however, evidence of those acts are admissible under the *res gestae* doctrine. *Pitman v. State,* (1982) Ind., 436 N.E.2d 74; *Brown v. State,* (1981) Ind., 417 N.E.2d 333.

In the instant case, the police returned Anderson and Appellant to the Galaxy Lounge approximately ten minutes after the police left the Galaxy to apprehend them. Appellant and Anderson there were positively identified and arrested. It was while being arrested and transported to the police station that Appellant voluntarily professed his innocence and stated that he did not commit the offense because he had just been released from the Boy's School. Appellant apparently thought at the time that what he was saying to Officer Wade had meaning and was significant with respect to the instant crime; therefore, we believe the jury was entitled to be duly informed of Appellant's statements. The probative value of said statements clearly was not outweighed by whatever prejudicial impact they may have had. We find no error.

### III

Appellant lastly contends that the trial court erred by denying his motion for severance. Appellant's said motion was tendered after co-defendant Anderson indicated that he intended to offer the testimonial evidence discussed above in part II. Appellant now argues that he was unduly prejudiced by being jointly tied with Anderson.

The law governing the severance of co-defendants is found in Ind.Code §§ 35–3.1–1–11 and 35–3.1–1–12 (Burns 1979) [replaced by Ind.Code §§ 35–34–1–11 and 35–34–1–12 (Burns 1983) effective September 1, 1982]. Appellant argues that he was unaware of co-defendant Anderson's intent to offer the testimony about Appellant's extra-judicial statements until midway through the trial; therefore, he was unable to move for severance until that time. We will assume, *arguendo,* that Appellant's motion was timely. Appellant's primary argument is that Anderson's testimony regarding Appellant's extra-judicial statements was extremely prejudicial. As discussed above, the testimony about Appellant's extra-judicial statements was not unduly prejudicial and was admissible pursuant to the *res gestae* doctrine. Moreover, the mandatory provisions of Ind.Code § 35–3.1–1–11(b)(1), (2), and (3), are not applicable to this case. The admission of an allegedly incriminating statement by a co-defendant warrants severance, *inter alia,* only when the statement would be inadmissible against the moving defendant. Since Appellant was in court and available for cross-examination, the statement clearly was not inadmissible against him. The instant trial court therefore was required to grant a severance only if it determined that a separate trial was appropriate to promote a fair determination of Appellant's guilt or innocence. We have held:

> "To compel a severance, the moving party must demonstrate that a fair trial cannot be had, otherwise, not merely that a separate trial offers a better chance for acquittal. 'Defendant must show on appeal that, in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court may be said to have abused its discretion in refusing to grant his motion for severance.' *Chandler v. State,* (1981) Ind., 419 N.E.2d 142, 149, *Ortiz v. State,* (1976) 265 Ind. 549, 356 N.E.2d 1188."

*Drane v. State,* (1982) Ind., 442 N.E.2d 1055, 1056. *See also Chandler v. State,* (1981) Ind., 419 N.E.2d 142. Appellant specifically claims that he was denied a fair determination of his guilt or innocence because the jury was subjected to conflicting testimony from the three eyewitnesses to this crime. Appellant particularly focuses on Sandy Emerson's misidentification of Appellant as the knife wielding attacker. The Record indicates that Emerson was recalled during trial to testify that he had identified the wrong person at first and to correct his testimony by stating that Anderson was the man who slashed Mrs. Gray with the knife. We do not find that the trial court's denial of Appellant's motion for severance subjected Appellant to substantial undue prejudice. The trial court did not abuse its discretion by refusing to Grant Appellant's motion for severance.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER, and De-BRULER, JJ., concur.

PRENTICE, J., concurs in result.