Donald LAHRMAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–883A275.

Court of Appeals of Indiana,
Fourth District.

July 17, 1984.
Rehearing Denied Aug. 24, 1984.

Frederic L. Romero, Romero & Thonert, Auburn, for appellant.

Linley E. Pearson, Atty. Gen., L.E. Wheat, Deputy Atty. Gen., Indianapolis, Craig T. Benson, Pros. Atty., 85th Ind. Judicial Circuit, Angola, for appellee.

CONOVER, Presiding Judge.

Defendant-appellant Donald Lahrman (Lahrman) appeals his jury conviction of Arson, a Class B felony. IND.CODE 35–43–1–1(a).

We affirm.

ISSUES

The issues, restated and reordered, are as follows:

1. Whether Lahrman is entitled to a new trial because officials from fire and law enforcement agencies destroyed exculpatory evidence after the fire.

2. Whether the prosecutor was guilty of misconduct by offering an amended fire report not previously made known to Lahrman's attorney.

3. Whether it was error to permit the State to amend the information the first day of trial.

4. Whether the trial court erred in limiting the voir dire of prospective jurors.

5. Whether the trial court erred in directing a verdict for Lahrman on Class A felony arson, but permitting the trial to proceed on the lesser included offense of Class B felony arson.

6. Whether the trial court erred by allowing an investigative officer to remain in the courtroom after separation of witnesses was ordered.

7. Whether comments by the trial judge during the proceedings were prejudicial to the defendant.

8. Whether the evidence is sufficient to sustain the verdict.

FACTS

Lahrman owned North State Sales, a business located near Angola. He sold mobile homes, travel trailers, trailer supplies, paint, L.P. gas and other supplies for trailers. During a considerable period of time prior to January 5, 1982, Lahrman and visitors to the business noted the furnace was "booming" when it ignited. The furnace occasionally would ignite with such force it knocked pictures off the wall. On January 4, 1982, a repairman serviced many of the internal working parts in the furnace. He determined the furnace was working properly prior to leaving.

The morning of January 5, Lahrman and at least one other person detected a strong smell of propane gas in the building. Lahrman aired out the building prior to noon. At about 12:15 P.M., Lahrman left with three others for a business lunch. After leaving, he said he needed to go back into the building to make sure the rear door was locked. Lahrman was in the building for perhaps 3 minutes. The four then proceeded to lunch.

At 12:25 P.M. an explosion damaged the building, scattering debris in front of it and onto an adjoining highway. The resulting fire required more than an hour to extinguish. Lahrman returned to the property after being informed of the fire, but was taken to a hospital after he appeared to be having heart problems.

Under supervision of State Fire Marshall's employees, debris was removed from the building and the floor washed down the day after the fire. The building was secured for several days as an investigation was made.

Employees of a company experienced in arson investigations examined the furnace and the building. They determined the fire had not been caused by an explosion of propane gas ignited by the furnace. Barker Davie (Davie), an expert witness for the State, determined the explosion and fire had been caused by gasoline vapors from approximately 2 quarts of gasoline spread over the floor of the showroom.

At trial, the trial judge limited each side to 30 minutes for voir dire of prospective jurors over Lahrman's objection. The trial court also permitted the State to amend its information to allege Lahrman caused an explosion on the premises, rather than he caused an explosion of L.P. gas. In addition, the trial court allowed the State to introduce an amended version of the original fire department report, showing two firemen had been slightly burned while fighting the fire. Lahrman had not seen the amended report prior to trial. The trial

court also allowed an investigative officer to assist the prosecutor during the entire trial, but did not require that officer to testify first even though the court had ordered separation of witnesses. Other relevant facts are included below.

## DISCUSSION AND DECISION

### I. Investigative Procedures

Lahrman argues the conviction must be reversed because exculpatory evidence was lost when North State's floor was cleared of debris and washed down the day after the explosion and fire. He also suggests Davie's testimony is not credible because it was not based on any study of materials in the removed rubble.

The State cites us to *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, where the court rejected a similar contention:

It is clear that the negligent destruction or withholding of material evidence by the police or the prosecution may present grounds for reversal. A suppression by the prosecution of evidence favorable to an accused violates due process when the evidence is material either to guilt or punishment.

In the instant case, defendant is not able to point to any specific evidence which actually was destroyed or lost. He is not able to establish that any other relevant evidence exists. His speculations about what might have existed do not offset the deference which must be given to the expertise of police officers in conducting an investigation. Defendant has not shown how he was prejudiced by the manner of the police investigation. (Citations omitted.)

*Id.*, 431 N.E.2d at 819–20. These principles also are applicable in this case. Lahrman presents nothing which demonstrates a significant possibility exculpatory evidence existed and was lost. On the contrary, Davie testified he believed the samples he studied were not affected by the clean-up operations. No error is demonstrated.

### II. Prosecutorial Misconduct

Lahrman contends he was prejudiced when the prosecutor failed to disclose an amended fire department report during pre-trial discovery then offered the report as evidence at trial. The amended report contained statements of injuries to two firemen not included in the original report. Thus, the prosecution used the amended report as an evidentiary harpoon, such act constituting prosecutorial misconduct, Lahrman opines.

 We review allegations of prosecutorial misconduct through a four-part test stated by our supreme court in *Maldonado v. State*, (1976) 265 Ind. 492, 498–99, 355 N.E.2d 843, 848, in the following language:

1. did the prosecutor engage in misconduct;

2. if so, was the defendant thereby placed in a position of grave peril to which he should not have been subjected;

3. whether grave peril exists is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct;

4. although an isolated incident of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to prejudice the defendant, a reversal may still result.

*See also, Gaines v. State*, (1983) Ind.App., 456 N.E.2d 1058, 1062.

 Assuming *arguendo* the prosecutor committed misconduct by failing to advise Lahrman of the amended report prior to trial, Lahrman was not thereby placed in a position of grave peril. The information specifically alleged two firemen were injured while fighting the fire, and Lahrman had deposed both prior to trial.

In similar circumstances our supreme court stated:

Appellant claims that a memorandum containing the substance of Reeves' testimony was subject to a defense discovery order and was intentionally concealed. The court erred in failing to strike Reeves' testimony, appellant contends.

This contention has no merit. While it is clear that the State is not permitted to conceal evidence and then surprise the

defense with it at trial, no surprise can be claimed here since Reeves' name was on the State's list of witnesses and the defense deposed him to trial. (Citations omitted.)

*Suggs v. State,* (1981) Ind., 428 N.E.2d 226, 228. Further, the trial court entered judgment for Lahrman on the charge of Class A felony arson, the only charge involving injury. Applying the second and third prongs of the *Maldonado* test, there was no prosecutorial misconduct meriting reversal.

### III. Amendment of the Information

Lahrman argues his substantial rights were prejudiced when the trial court the first day of trial allowed the State to amend the information and then gave Lahrman only an overnight continuance. The information in pertinent part originally charged Lahrman with "[c]reating circumstances *which lead to an explosion of L.P. gas contained in the premises*[.]" The amended information in pertinent part charged Lahrman with "[c]reating circumstances *which lead to an explosion*[.]"

Lahrman vigorously contends he was not able to prepare an adequate defense after the amendment because it went to a material aspect of the charge rather than a defect in form. Lahrman emphasizes the Information was not amended 30 days or more before the omnibus hearing, as required for substantive changes by IC 35–34–1–5(d). The State responds the reference to L.P. gas was surplusage, thus the amendment did not effect the substance of the charge, citing *Pounds v. State,* (1983) Ind., 443 N.E.2d 1193, and *Owens v. State,* (1975) 263 Ind. 487, 333 N.E.2d 745.

In *Pounds* the court found no error when the State was permitted after its case-in-chief to amend the charging instrument to allege use of a handgun ·rather than a knife. In *Owens* the court rejected a claim error occurred when the State was permitted the first day of trial to amend the charge to allege shooting of a revolver and bullets instead of shooting a shotgun and pellets.

■ This area is necessarily fact sensitive, however. Here, the State initially alleged Lahrman caused the explosion and fire by the specific means of L.P. gas in a business filled with many flammable substances. The amendment therefore considerably widened the scope of the State's opportunity to prove Lahrman caused the explosion, because the amended charge encompassed any means. However, Lahrman has not demonstrated he was prejudiced by the amendment of the charging instrument.

Several months before trial, Davie testified in a deposition gasoline vapors, not L.P. gas, caused the explosion. Lahrman thus was aware at that time of Davie's conclusion and that Davie was a State's expert witness. At trial, Lahrman actually attempted to refute the charge by showing L.P. gas *did cause* the explosion after being ignited by the furnace or another source. Except for general assertions, Lahrman does not otherwise demonstrate how he was prejudiced by amendment of the information. Accordingly, there was no error.

### IV. Limitation of Voir Dire

Lahrman argues the trial court erred by allowing only 20 minutes for voir dire of the panel of prospective jurors.

■ Initially, we note the court allowed each side *30* minutes to voir dire the panel, and the trial court also agreed to ask the prospective jurors relevant questions. Moreover, voir dire of prospective jurors is a matter within the discretion of the trial court. We will find error in this regard only upon showing of substantial abuse of discretion. *Cf., Roberts v. State,* (1978) 268 Ind. 127, 130, 373 N.E.2d 1103, 1106; *Hunter v. State,* (1977) 172 Ind.App. 397, 402, 360 N.E.2d 588, 593, *cert. den.* (1977) 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193. Lahrman specifically contends he was denied the opportunity to voir dire a prospective juror who was a fireman, and was therefore prejudiced. However the record shows the trial court reminded Lahrman's counsel he had five minutes for questioning

left, and it was not used. Lahrman has not demonstrated abuse of discretion.

### V. Lowering of Charge

Lahrman contends the trial court erred by entering judgment for him as to class A felony arson at the conclusion of the State's case-in-chief, but allowing the trial to proceed on a charge of class B felony arson. Lahrman argues he should have been discharged. He cites *Adams v. State*, (1974) 262 Ind. 220, 314 N.E.2d 53, and *Von Hauger v. State*, (1962) 252 Ind. 619, 251 N.E.2d 116, which say when a defendant has committed acts constituting a violation of more than one criminal statute, the State has the option to prosecute under any or all of those statutes. He contends because the State had the option of charging him in separate counts with different grades of felony arson and did not, it was foreclosed from further prosecution on the class B felony arson charge as a lesser included offense. He also suggests because the information was drawn so as to include only a class A felony arson charge, his due process rights were violated when he was convicted of class B felony arson.

 Lahrman's contention the State is precluded from the class B conviction because it could have charged him separately for class A and B felony arson in different counts is unsupported either by reason or cited authority, including *Adams* and *Von Hauger*. Accordingly, we find no merit to this claim.

Further, for reasons which follow, we conclude Lahrman properly was convicted of class B felony arson as an inherently included offense of the crime charged.

Our legislature has defined included offenses in IC 35-41-1-2,

"Included offense" means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

The same definition was included in IC 35-41-1-2, applicable at the time of this trial.

Our courts have further developed the principles of included offense law in terms of whether the lesser offense is "inherently" included or "possibly" included in the greater charge. In *Jones v. State*, (1982) Ind., 438 N.E.2d 972, 974, the court described an inherently included offense, saying "by definition, it is impossible to commit the greater offense without also committing the lesser offense." The court also described a second class of included offenses, stating although "a particular lesser offense may not be inherent in the greater offense, it may have been committed by reason of the manner in which the greater offense was committed." *Id.*, 438 N.E.2d at 974 (citations omitted).

 Of course, when either class of included offense is involved, a lesser included offense instruction is not appropriate unless the evidence warrants submission of the instruction to the jury. *Lawrence v. State*, (1978) 268 Ind. 330, 337-38, 375 N.E.2d 208, 212-13; *Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098, 1010-1011. In this case, there is no dispute the evidence supported a conviction for class B felony arson. The explosion scattered debris over a relatively wide area onto a highway, and L.P. gas tanks inside posed a substantial danger of further explosions. These were circumstances which endangered human life. Rather, the more fundamental questions are whether class B felony arson is inherently included in the crime of class A felony arson; and whether class B felony arson was included in the charge against Lahrman.

Under IC 35–43–1–1(a), a person who, by means of fire or explosive knowingly or intentionally, damages: (2) property of any person under circumstances that endanger human life, commits arson, a Class B felony.

Then the statute immediately continues [h]owever, the offense is a Class A felony if it results in bodily injury to any other person.

Thus, all the material elements of Class B felony arson were included in the crime of Class A felony arson. Accordingly, we conclude class B felony arson is an inherently included offense of class A felony arson.

■■■ So concluding, we must next examine the charging information. *Sills v. State*, 463 N.E.2d 228, 235 (1984) Ind. The information in pertinent part alleged Lahrman did

knowingly damage by means of fire property of North State Sales, to-wit: the North State Sales building, located on Route 127 North just north of Angola, Indiana, under circumstances that endangered human life, ... which resulting fire endangered the lives of those persons fighting the fire ... which fire caused bodily injury by smoke inhalation and/or burns to two (2) firemen; ....

The information first tracks the language of class B felony arson, then it alleges bodily injury, the distinguishing element of class A felony arson. Therefore, we conclude the information encompassed charges of class A *and* B felony arson.

No constitutional problems arise from conviction of an inherently included offense supported by sufficient evidence. *See Murphy v. State*, (1980) Ind.App., 414 N.E.2d 322, 323. Thus, no error occurred when the trial court withdrew the charge of class A felony arson from consideration, but allowed the trial to proceed on the charge of class B felony arson.

### VI. Separation of Witnesses

■■■ Lahrman argues the trial court erred by permitting an investigative officer to remain in the courtroom without requiring him to testify first. However, he makes no relevant supporting argument to that effect. He only attacks the investigating officer's credibility. Thus, this contention is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). *Akins v. State*, (1981) Ind., 429 N.E.2d 232, 236–37.

### VII. Judicial Misconduct

Lahrman argues the conviction must be reversed because of the trial judge's interference during the proceedings. The first problem we face is whether Lahrman waived the issue.

Lahrman cites 42 excerpts from the record which he contends constitute inappropriate or prejudicial remarks by the trial court. Of these, 35 relate to the trial court's performance of its duties as trial supervisor and merit no further review. Seven of these excerpts, however, might have merit. Of these remaining excerpts, defense counsel made at most informal objections to three. Following a weekend recess, he moved for mistrial as to another. The State contends Lahrman has waived this issue, at least as to the remarks to which he made no objection.

There appears to be a divergence of authority in this State concerning the requirements of preserving judicial misconduct as an issue for appeal. As a general rule, however, our courts have held a prompt objection to the trial court's conduct is required to preserve the issue. *See, Horne v. State*, (1983) Ind., 445 N.E.2d 976, 980–82; *Reid v. State*, (1967) 249 Ind. 247, 250–51, 231 N.E.2d 808, 810; *Puckett v. State*, (1982) Ind.App., 443 N.E.2d 77, 78; *Jones v. State*, (1982) Ind.App., 435 N.E.2d 616, 621; *Coleman v. State*, (1980) Ind.App., 409 N.E.2d 647, 649; *Hauk v. State*, (1974) 160 Ind.App. 390, 394, 312 N.E.2d 92, 95. However, on at least two occasions our supreme court has reviewed allegations of judicial misconduct which had not been properly preserved.

In *Wilson v. State*, (1943) 222 Ind. 63, 51 N.E.2d 848, the defendant did not receive adequate assistance of counsel, including preservation of error in a proper motion for

new trial. Among other things trial counsel failed to object to remarks by the trial court suggesting the defendant was committing perjury. Nevertheless, our supreme court reviewed the entire record and reversed, saying adequate representation by counsel is an inherent requirement of due process. Although review of the trial court's conduct in *Wilson* stemmed from the court's perception of inadequate representation by counsel, the court later relied on *Wilson* to review judicial conduct in *Kennedy v. State*, (1972) 258 Ind. 211, 280 N.E.2d 611, where there was no allegation counsel was inadequate.

In *Kennedy*, the trial court vigorously examined expert psychiatric witnesses in a manner revealing he questioned their credibility. Counsel made no objection to several of these comments. In deciding to review even the trial court's remarks where no objection had been made, Justice Hunter wrote:

> There were several other incidents of improper judicial intervention in the trial. None of the remaining occurrences were objected to and it is the State's contention they are therefore waived. However, the task of this Court must be to insure justice and due process. *Wilson v. State* (1943), 222 Ind. 63, 51 N.E.2d 848, involved a situation where the alleged error was not contained in the motion for new trial. This Court there stated:
>
> > "The easy course would have been to examine the motion for new trial and, having found that the errors relied upon are not mentioned therein, to have affirmed the judgment .... But in a case involving an appellant's life or liberty we may not ignore prejudicial errors affecting his constitutional rights .... The procedural rules that would prevent their consideration must give way to the fundamental principles of due process." 222 Ind. at 78, 51 N.E.2d at 854.
>
> A fair trial by an impartial judge and jury is an essential element in due process. See Art. 1, §§ 12 and 13 of the Constitution of Indiana. Also, an attorney would be reluctant to object to the judge's questioning as it then would appear to the jury that the defense and the court were in direct conflict thus doing further damage to defendant's cause.

*Id.,* 258 Ind. at 217–18, 280 N.E.2d at 615.

Neither *Kennedy* nor any other case we have examined holds trial court conduct will be reviewed as fundamental error where no objection is made. Trial counsel have a duty in this area, as in others to object so the trial court may have the opportunity to admonish the jury or take other corrective action. However, in this case Lahrman sufficiently has preserved the issue for review.

This court recently restated the trial judge's responsibility to retain the appearance of impartiality while before the jury:

> A jury of laymen will often have an awesome respect for the institution of the American trial judge. This can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality.

*Long v. State*, (1983) Ind.App., 448 N.E.2d 1103, 1105, *quoting Kennedy, supra,* 258 Ind. at 226, 280 N.E.2d at 620–21; *Brannum v. State*, (1977) 267 Ind. 51, 59, 366 N.E.2d 1180, 1185. Nevertheless, we also must keep in mind the trial judge

> conducting a jury trial has the affirmative duty to guide the trial away from the wasteful expenditure of time, the totally irrelevant, and the unnecessarily prejudicial.

*Brannum,* 267 Ind. at 60, 366 N.E.2d at 1185 (DeBruler, J., dissenting). *Accord Lawson v. State*, (1980) Ind., 412 N.E.2d 759, 767–79, *cert. den.* (1981) 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424. *See also, Marbley v. State*, (1984) Ind., 461 N.E.2d 1102, 1106–08.

Several of the trial court's remarks follow. First, trial counsel was objecting to introduction of a door lock found on the premises after constant police surveillance

over the building had stopped. The trial court admitted the lock and said

> COURT: I'm going to admit the lock. Ladies and gentlemen of the Jury, what Mr. Romero's objection goes to is for you to decide whether after the Steuben County Police Department evacuated the scene at 3:33 P.M. someone would have either have snuck on the premises or a low flying airplane would have dropped aloft, or a tramp. Anyone so ever would have brought a lock in in the next twenty-four (24) and this man found it.

Later, defense counsel objected to the prosecutor's use of leading questions:

> MR. ROMERO: Oh, Your Honor, I've let all these leading questions and everything—
>
> MR. BENSON: If Mr. Romero didn't want them in, Your Honor, he would have objected.
>
> COURT: Well, we've—I hesitate to characterize any of your witnesses, but we do have a witness that seems to be able to respond to you in an intelligent manner. All of your witnesses have been good and hopefully the defendant's witnesses will all be good.

R. 675–76. Later in the trial, at the conclusion of re-cross examination of Davie, the following exchange occurred:

> MR. ROMERO: I have no more questions of this witness Your Honor.
>
> COURT: What? You have none?
>
> MR. ROMERO: I have no more questions.
>
> COURT: All right. I have a question. And, Jury Members, don't feel my question is any better than these fine counsel. About four or five years ago I seem to recall during the gasoline shortage we come out in (sic) a plastic jug an artificial gasoline product that you could carry in the trunk of your car. It didn't quite have the flash point of gasoline but if you ran out of gas you could put it in your gasoline.
>
> A. Your Honor, if you're talking about a—

> COURT: The Jury can't see the witness. Now you can. Don't talk to me, tell the Jury.
>
> MR. ROMERO: Okay. I'm going to object at this point, Your Honor. I fail to see—
>
> COURT: I'm just trying to—well, of course, I didn't finish the question when the Bailiff stepped in front there, so I'll finish the question. Have you had occasion to make chromatagraph examinations of that material?
>
> A. Would you describe it for me again, please?
>
> COURT: It's a substitute gasoline. Evidently it was sold about five or six years ago. That you could carry it in the trunk of your car, if you ran out of gas you could use it in place of gas. I assume it would have to be a petroleum distillate, but my chemistry goes back to 1949.
>
> A. I cannot specifically recall one like that.
>
> COURT: Now, any questions on that?

█ When counsel in this case moved for a mistrial after the court's comment about the "good" State's witnesses, the court gave the jury a lengthy admonition. At the close of trial, the court also gave a final instruction regarding the role of the trial judge. Although several of the trial court's interjections were inappropriate, we conclude Lahrman was not denied a fair trial.

*VIII. Sufficiency of the Evidence*

█ Finally, Lahrman contends the evidence was not sufficient to support the verdict. In reviewing sufficiency of evidence questions, this court neither will reweigh the evidence nor judge the credibility of witnesses. We will view the evidence and all reasonable inferences to be drawn therefrom most favorably to the State, and will affirm if there is substantial evidence of probative value supporting the verdict. *See, Terry v. State,* (1984) Ind., 457 N.E.2d 546, 548; *Gatewood v. State,* (1982) Ind., 430 N.E.2d 781, 782–83; *Griffin v. State,* (1980) Ind.App., 413 N.E.2d 293.

Lahrman relies on *Griffin*. There, the defendant was a manager at a recreational vehicle dealership. He was called late one evening with a report of problems with blinking lights at the dealership. He told others he was going there, parked his car in a conspicuous place, went into the dealership, turned on a light switch next to the front door, then left the building immediately and spoke with a police officer who had stopped by the property. While they were talking the officer saw smoke coming out of the building. *Id.*, 413 N.E.2d at 294. Judge Hoffman emphasized presence at a crime scene alone is not sufficient to support guilt but it may be considered with other evidence including the defendant's conduct before and after the offense occurred. *Id.*, 413 N.E.2d at 295. The court then determined the facts Griffin informed others of his destination, parked in a conspicuous place, made no attempt to avoid the officer, and assisted firefighters, showing no attempt to flee the scene, provided "absolutely no circumstantial evidence which would imply guilt." *Id.*, 413 N.E.2d at 295. The conviction was reversed.

Lahrman argues *Griffin* controls in this case. He emphasizes he was in the North State Sales building only a very short time before leaving for lunch, he returned to the scene after being informed of the fire and was hospitalized after having a traumatic reaction. He also emphasizes several witnesses testified of problems with propane gas leaking in the building and the fact he had no motive to destroy the business.

█ *Griffin* is distinguishable. There, the record showed only the defendant had entered the building's front door, turned on a timer switch next to the door, and exited immediately. *Id.*, 413 N.E.2d at 294. In this case Lahrman was alone in the building for about three minutes, and stated he was going to lock the *back* door. Although there were problems with the business's furnace and leaking L.P. gas, there also was evidence those in the building shortly before the explosion did not smell propane gas nor observe spilled gasoline. Expert witnesses testified there was no evidence

of an explosion in the furnace. Davie testified an explosion of propane gas would have completely destroyed the building and burning primarily would have been in upper levels. Instead, he found considerable low-level burning in a pattern along the floor indicating an accelerant had been spread there. He further testified he found residue of burned gasoline in samples taken from the building, and concluded about two quarts of gasoline had been spread over the floor. He stated the gasoline vapors could have been ignited by the furnace pilot light ten to fifteen minutes after the gasoline had been spread. The explosion occurred almost exactly ten minutes after Lahrman left the building. Although circumstantial, this evidence was sufficient to support the jury's verdict.

Judgment affirmed.

MILLER, J., concurs.

GARRARD, J. (sitting by designation), concurs and files separate opinion.

GARRARD, Judge, concurring.

I concur with the majority but desire to amplify upon our treatment of the trial judge's undue intrusion into the trial. Counsel acknowledge, and upon my examination of the record I agree, the remarks, questions and uncalled-for explanations issuing from the judge were made without ill will or malice. Generally speaking, they occurred whenever the judge appeared to have some question about what a witness was testifying to or when he was called upon to rule upon an objection.

I agree that when taken in the context of the entire conduct of the trial, the judge's reference to how "good" the witnesses had been did not amount to a denial of due process such that we should treat the issue as fundamental error. *Brady v. State* (1984), Ind., 463 N.E.2d 471, (1984); *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611. Under such circumstances the normal rules of appellate review require that counsel make a specific and contemporaneous objection followed by a request for admonishment and a motion for mistrial if the

request is denied or any admonishment would be insufficient to correct the error. *Brady, supra.*

I recognize, as did the court in *Kennedy,* that counsel is in a difficult position when called upon to object to judicial misconduct. It hardly bears mention that such objections are best voiced outside the presence of the jury albeit on the record. Indeed where the judge's conduct is simply excessive comment, as a tactical approach counsel may choose to initially bring his objection to the court's attention informally at a recess or break in the proceedings reserving formal objection for the judge's failure to thereafter alter his approach.

In addition, I endorse the view taken by Justice Hunter in *Kennedy* that so long as there are specific objections made on the record, counsel need not object to every instance of intrusion in order to preserve error. In that context we may look to other instances that occurred during the trial after the objection was made in determining the weight and substance of the conduct to which specific objection was made. Yet beyond this point our normal approach to appellate review should apply. Unless the misconduct is so extensive or grievous as to compel a determination that the complaining party was denied due process, intrusions by the judge are waivable in the absence of specific and contemporaneous objection.

Moreover, such objections appear capable of simple statement.[1] In *Kennedy* the court held where the judge's comments or questions disclosed a lack of impartiality a party's rights to due course of law (due process) under article 1, section 12 of the Indiana Constitution, is impinged. 280 N.E.2d at 615. Where the court's comments reflect upon the weight of certain evidence or credibility of certain witnesses, they invade the province of the jury. Article 1, sections 19 (criminal) or 20 (civil), Indiana Constitution; *Wilson v. State* (1943), 222 Ind. 63, 51 N.E.2d 848. Where counsel is disparaged before the jury or the court unduly disrupts the orderly presentation of the case it would appear that a party's right to due course of law and the assistance of counsel are implicated.

No specific timely objections to the judge's comments and conduct were advanced by counsel in this case. I agree that the matters in question were therefore waived.

I concur.

---

1. A mere general objection is insufficient to preserve error. *Hogan v. State* (1980), Ind., 409 N.E.2d 588.