## LOFTUS *v.* STATE OF INDIANA.

[No. 27,894. Filed January 17, 1944.]

140

*Louis E. Kunkel,* of Michigan City, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

FANSLER, C. J.—The defendant was tried by a jury upon an indictment which is denominated "Indictment For Murder." There was a verdict of guilty and he was sentenced to death. The indictment charges that the defendant did "unlawfully and feloniously kill and murder one William Tennell, in the perpetration of the crime of bank robbery." There is no allegation of "Premeditated malice," or that the killing was done "purposely and maliciously, but without premeditation," or that the killing was "voluntary, upon a sudden heat."

The murder statute in effect at the time was as follows: "Whoever, purposely and with premeditated malice, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life: *Provided,* Whoever, in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death." Acts 1929, ch. 54, § 4, p. 136. (This statute was afterward amended in 1939 by adding the words "or be imprisoned in the state prison during life." Acts 1939, ch. 133, § 1, p. 658. See § 10-3401, Burns' 1942 Replacement, § 2402-1, Baldwin's Supp. 1941.) At the same session of the Legislature a statute was enacted defining robbery as follows: "That whoever forcibly and feloniously takes from the person of another any article of value, by violence or by putting in fear, is guilty of robbery . . . " Acts 1929, ch. 54, § 1, p. 136. To this extent the statute was a reenactment of a former statute which was superseded. In 1927 a bank robbery statute was enacted in the following language: "That whoever, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bonds or other valuables, or shall by intimidation, fear, or threats compel or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, whether he

succeeds or fails in the perpetration of such larceny or felony, shall be deemed guilty of the crime of bank robbery . . ." Acts 1927, ch. 158, § 1, p. 470, § 10-4102, Burns' 1942 Replacement, § 2417, Baldwin's 1934. This statute was in effect when the first-degree murder statute of 1929 was enacted.

In order to charge murder as defined by the statute, the indictment must charge that the killing was done "purposely and with premeditated malice," or, in the alternative, that the killing was done "in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary." It is clear that the indictment under consideration did not and was not designed to charge that the killing was done purposely and with premeditated malice. It does not charge that the killing was done in the perpetration of or attempt to perpetrate a "robbery." It does charge the killing to have been in the perpetration of a "bank robbery." The drawer of the indictment seems to have considered the word "robbery" to be broad enough to cover "bank robbery." But, in determining whether the statute may be so construed, we must go deeper than the names involved and look to the substance of the offenses to which the names have been applied. If the word "larceny" had been used it would undoubtedly be construed as including both "grand larceny" and "petit larceny," since they are but different degrees of the same offense. The effect of the robbery statute would be the same if the words "is guilty of robbery" had been omitted, and it had merely provided that "whoever takes from the person of another any property, by violence or by putting in fear, shall upon conviction be imprisoned," thus leaving the crime without a name, and the same is true of the "bank robbery" statute. In fixing a death penalty for a killing which was not pur-

posely done and was without premeditated malice, the Legislature must have looked to the substance of the offenses which were being committed at the time of the killing rather than to the name. The Legislature knew that the acts constituting "bank robbery" were entirely different from acts constituting "robbery." Robbery involves a taking from the person of another. Bank robbery involves acts committed with intent to commit "larceny, or any felony." It might be argued that while the acts involved in bank robbery are different than those involved in a robbery, they are equally serious, and there is much reason why the Legislature might have included both, but the same may be said of killing in the commission of the crime of kidnapping, which is not included. In construing criminal statutes, we are not concerned with what the Legislature might have done. We are concerned only with determining the legislative intent as expressed in the statute. " 'It is fundamental that penal statutes are to be strictly construed; that a statute in derogation of a common right and highly penal in character is only to be applied to cases clearly within its provisions; that penalties may not be created by construction, but must be avoided by construction unless they are brought within the letter and the necessary meaning of the act creating the penalty. This requires that where there is ambiguity it must be resolved against the penalty, and only those cases brought within the statute that are clearly within its meaning and intention.' *Manners* v. *State* (1936), 210 Ind. 648, 654, 5 N. E. (2d) 300, 303." *Dowd, Warden,* v. *Sullivan* (1940), 217 Ind. 196, 202, 203, 27 N. E. (2d) 82, 85. It is obvious that the reason for this rule applies with great force where it must be determined whether there is a legislative intention that the death penalty shall be imposed for a killing which

was not purposely done and which was without premeditated malice. Sound principles of construction require the conclusion that if the Legislature had intended to include the acts which are described as "bank robbery" within the statute, it would have expressly included them by naming the crime of bank robbery as one of those in the perpetration of which a killing without purpose and without premeditated malice would be punished by death. A human life cannot be forfeited where there is any room for reasonable doubt.

It follows from our conclusions that the indictment under which the appellant was tried is deficient as a charge of murder in the first degree or murder in the second degree. Since the killing is charged to have been unlawful, and is not charged to have been "voluntary," it is insufficient to charge voluntary manslaughter. But, since it does charge the killing to have been unlawful and felonious, and in the commission of an unlawful act, it would seem to sufficiently charge involuntary manslaughter, in which case the superfluous language would be treated as surplusage.

There was no motion to quash or to strike out the surplusage in the indictment. There was, however, a timely motion for a new trial which questions the instructions. The court instructed the jury that the action was a prosecution for murder in the perpetration of a bank robbery. The indictment was read to the jury, and in one of the instructions what was described as "the pertinent" parts of the statute defining the offense for which the defendant was on trial was set out. The quotation from the statute is as follows: "Whoever, in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death." As a part of

another instruction, the court read the "bank robbery" statute, and told the jury that if the defendant did kill William Tennell in the perpetration of a bank robbery as described in the statute, it might find him guilty. Nowhere in the instructions was the jury advised that it must find the killing to have been purposely done, or intentionally done, or premeditatedly done. No punishment was fixed by the verdict. It merely found the defendant guilty. There was judgment sentencing the defendant to death. It seems that the entire case, from the drawing of the indictment to the entering of the judgment, was conducted upon the theory that there was a sufficient charge of murder in the first degree as defined in the then existing statute, and that conviction required a death penalty. The evidence, which is not in the record, might have been sufficient to sustain a charge of premeditated, malicious murder, but the instructions authorized a conviction upon evidence insufficient to sustain such a charge.

Judgment reversed, with instructions that it be set aside and that the motion for a new trial be sustained.

The clerk of this court will issue the proper order for the return of the prisoner to the custody of the sheriff of St. Joseph County.

NOTE.—Reported in 52 N. E. (2d) 488.