Joshua P. SMITH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 79S00–9505–CR–00539.

Supreme Court of Indiana.

Dec. 30, 1996.

Marcel Katz Law Offices of Marcel Katz, Lafayette, for appellant.

Pamela Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellee.

SELBY, Justice.

Appellant Joshua Smith entered a plea of guilty to murder and was convicted of that crime. The court sentenced Appellant to a term of sixty years, with fifty years to be executed, five years on supervised probation, and five years on unsupervised probation. In making its sentencing decision, the court relied upon one of two different but simultaneously existing murder sentencing statutes. Appellant raises two issues: (1) whether the trial court sentenced Appellant under the incorrect sentencing statute; (2) whether the sentence was manifestly unreasonable. We remand for a new sentence determination.

### FACTS

On December 14, 1994, seventeen-year-old Joshua Smith and an acquaintance, Michael Brand, abducted Gary Cook and drove off in the victim's car. Their intent was to rob Cook. Appellant drove the three of them from downtown Lafayette, Indiana, through the campus of Purdue University, and into a rural area of Tippecanoe County where they stopped the car on a country road. During the drive, Brand held a gun, which Appellant had stolen from his father, to Cook's head.

Cook attempted to escape when the car stopped, but Appellant tackled him to the ground. As Appellant was getting up off of the ground, Brand shot Cook. Appellant and Brand took about one hundred and twenty dollars ($120.00) from Cook, whom they left at the scene.

Appellant and Brand drove the car back to town and abandoned it near Purdue University. They disposed of Appellant's bloody jacket and gloves in a trash can, and later disposed of the gun as well. Appellant and Brand entered a McDonalds where they purchased two drinks and used the bathroom. Later they split the money, getting about sixty dollars ($60.00) each.

Appellant was charged with Murder, Conspiracy to Commit Murder, Robbery, and Conspiracy to Commit Robbery. Appellant entered a plea agreement whereby he would plead guilty to murder and would be sentenced to no more than fifty years executed. The trial court accepted the plea and sentenced Appellant to sixty years, fifty to be executed and ten on probation.

*DISCUSSION*

I.

 While a significant portion of this opinion deals with Appellant's second claim concerning the reasonableness of his sentence, the most important question that Appellant brings to us in his appeal is purely a question of law. Appellant first asks this Court to consider whether the trial court utilized the proper sentencing statute. One of our well established rules of criminal law is that the controlling law is that which is in effect at the time the crime is committed. *Jackson v. State*, 257 Ind. 477, 275 N.E.2d 538, 542 (Ind.1971). On the date of the crime in this case, December 14, 1994, there were two sentencing statutes in effect. Appellant argues that the trial court sentenced him under the wrong one.

Indiana Code § 35–50–2–3 instructs a court on how to sentence a defendant convicted of murder. During the 1994 legislative session, the General Assembly twice amended Indiana Code § 35–50–2–3. The first amendment changed the presumptive sentence for murder in section 3(a) from forty to fifty years and reduced the possible enhancement time from twenty to ten years.[1] P.L. 164–1994 (approved March 11, 1994 and effective July 1, 1994). The second amendment allowed for the exclusion of mentally retarded individuals from the death or life imprisonment without parole sentencing option of section 3(b).[2] P.L. 158–1994 (approved March 15, 1994 and effective July 1, 1994). However, the second amendment did not incorporate the changes of the first amendment. Thus, at the time of Appellant's crime on December 14, 1994, there were two different Indiana Code Sections 35–50–2–3 in effect, each with different presumptive sentences for murder.[3]

The record shows that there was some confusion as to the proper statute to employ. For instance, during the guilty plea hearing, the State brought to the court's attention that the two different statutes existed. Appellant, through his counsel, answered to the effect that he believed they were operating

---

1. The amendment read:
 SECTION 2. IC 35–50–2–3 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 1994]: Sec. 3.(a) A person who commits murder shall be imprisoned for a fixed term of ~~forty (40)~~ fifty (50) years, with not more than ~~twenty (20)~~ ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, the person may be fined not more than ten thousand dollars ($10,000).
 (b) Notwithstanding subsection (a), a person who was at least sixteen (16) years of age at the time the murder was committed may be sentenced to:
 (1) death; or
 (2) life imprisonment without parole;
 under section 9 of this chapter.

2. This later amendment read:
 SECTION 5. IC 35–50–2–3 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 1994]: Sec. 3.(a) A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, the person may be fined not more than ten thousand dollars ($10,000).
 (b) Notwithstanding subsection (a), a person who was at least sixteen (16) years of age at the time the murder was committed may be sentenced to:
 (1) death; or

 (2) life imprisonment without parole;
 under section 9 of this chapter **unless a court determines under IC 35–36–9 that the person is a mentally retarded individual.**

3. The General Assembly finally corrected the problem on May 5, 1995 when it amended the Indiana Code to make technical corrections. The amendment read:

 SECTION 128. IC 35–50–2–3, AS AMENDED BY P.L. 158–1994, SECTION 5 AND P.L. 164–1994, SECTION 2, IS CORRECTED TO READ AS FOLLOWS [EFFECTIVE UPON PASSAGE]: Sec. 3.(a) A person who commits murder shall be imprisoned for a fixed term of ~~forty (40)~~ fifty (50) years, with not more than ~~twenty (20)~~ ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, the person may be fined not more than ten thousand dollars ($10,000).
 (b) Notwithstanding subsection (a), a person who was at least sixteen (16) years of age at the time the murder was committed may be sentenced to:
 (1) death; or
 (2) life imprisonment without parole;
 under section 9 of this chapter *unless a court determines under IC 35–36–9 that the person is a mentally retarded individual.*
 P.L. 2–1995 (approved May 5, 1995).

under the fifty-year presumptive statute, and that "[t]he other statute which [the State] has pointed out is something that I have not discussed with my client and or what effect, if any, it would have in this proceeding." (R. at 61.) The court then asked Appellant if they could proceed using the fifty-year presumptive sentencing statute, and the Appellant agreed. At the sentencing hearing, however, Appellant stated that the forty-year presumptive sentencing statute was appropriate. Appellant argues in this appeal that the trial court erred by sentencing him under the fifty-year presumptive sentencing statute.

■ We agree with Appellant. First of all, and most straightforward, there is an established rule of statutory construction that "as between two inconsistent acts passed by the same session of the legislature, even if they become effective at the same time, the one subsequently passed prevails." *Milk Control Board v. Pursifull*, 219 Ind. 49, 36 N.E.2d 850, 852 (Ind.1941); *see also Houtchens v. Lane*, 246 Ind. 540, 206 N.E.2d 131, 134 (Ind.1965) (stating that "[w]here there is a conflict between statutes, the more recent statute is controlling ..."); 82 C.J.S. *Statutes* § 384 (1953); 26 I.L.E. *Statutes* §§ 87, 161 (1960). Under this rule, the correct statute to follow was P.L. 158–1994 with its forty-year presumptive sentence.

■ We agree with Appellant on a second basis as well. When attempting to construe the meaning of a statute, our primary goal is to determine the legislature's intent. *Freeman v. State*, 658 N.E.2d 68, 70 (Ind. 1995). Furthermore, two statutes which address the same subject are in *pari materia* and should be harmonized when possible. *Id.* In the present case, the General Assembly essentially enacted two different murder sentencing statutes. One statute required a presumptive sentence of fifty years while the other required a presumptive sentence of forty years. Those two requirements cannot be harmonized, and thus the statutes cannot be harmonized.

At first blush, this case appears to be similar to the situation we were presented with in *State v. Bigbee*, 260 Ind. 90, 292 N.E.2d 609 (Ind.1973). In that case, we resolved a legislative intent problem by reading together two statutes which were enacted in the same session. Defendant had been indicted for executing a bond without collecting a full premium. Defendant was charged under a statute which read: "It shall be unlawful for a bail bondsman to execute a bail bond without collecting in full a premium therefor...." *Id.* 292 N.E.2d at 610. The issue was whether the statute had outlawed "credit bonding," which means accepting as payment an unsecured promise to pay in the future. This Court held that "credit bonding" was illegal because, when the charging statute was read in conjunction with another statute which concerned the same subject matter and was passed at the same time, it was clear that the legislature meant to outlaw "credit bonding." [4]

In the present situation, the General Assembly enacted the two versions of Indiana Code § 35–50–2–3 within a week of each other. The first enactment changed the presumptive sentence in section 3(a) from forty to fifty years. The second enactment amended section 3(b) of the statute to allow for the exclusion of a mentally retarded individual from the death or life imprisonment without parole sentencing option. At first, it may seem that the intent of the legislature was obvious, and that, like *Bigbee*, the two enactments were meant to be read together to form a single meaning.

However, without the benefit of the ultimate correction,[5] a court confronted with the conflicting statutes could not easily discern the intent of the General Assembly. In *Bigbee*, the two statutes could be read together without any conflict. In the case at bar, the two statutes present two different rules and can only be read in conflict. As exemplified by the proceedings in this case, any trial court confronted with this situation had only

---

**4.** The other statute changed the definition of "bondsman" from "one who executes bonds and receives *or is promised* money or other things of value" to "one who executes bonds and receives

money or other things of value." *Id.* at 611 (emphasis added).

**5.** See supra note 3.

one choice: to arbitrarily choose between the two statutes. Without the May 5, 1995 correction, we could not have harmonized the two statutes, nor could we have known the intent of the legislature.

■ When confronted with an ambiguous penal statute, we are aided by our long-standing rule that a penal statute must be strictly construed against the State. *Spangler v. State*, 607 N.E.2d 720, 723 (Ind.1993); *Loftus v. State*, 222 Ind. 139, 52 N.E.2d 488, 490 (Ind.1944). As we stated in *Loftus*, "[i]n construing criminal statutes, we are not concerned with what the Legislature might have done. We are concerned only with determining the legislative intent as expressed in the statute." *Loftus*, 52 N.E.2d at 490. When that intent is unclear, we must construe the statute against the State. *Id.* This policy of lenity applies to the ambit of criminal laws and to the penalties that they impose. *See Dowd v. Sullivan*, 217 Ind. 196, 27 N.E.2d 82, 85 (Ind.1940) (strictly construing a penal statute so that defendant received concurrent rather than consecutive sentences).

In the present case, the General Assembly expressed two different sentencing intentions by enacting two conflicting versions of the same statute. We must, therefore, construe the statute against the State and hold that, until the General Assembly corrected their mistake, the proper statute to follow was P.L. 158–1994 with its forty-year presumptive sentence. Under either of the reasonings set forth in this opinion,[6] the trial court was incorrect insofar as it may have employed a fifty-year presumptive sentence for murder.[7]

## II.

■ Appellant next raises the issue of whether his sixty-year sentence, the maximum term of years allowed under either statute, was manifestly unreasonable. In the sentencing hearing, the court found three aggravating factors: Appellant's criminal his-

tory, the surrounding circumstances of the crime, and Appellant's need for correctional rehabilitation. The court found Appellant's youth to be the only mitigating factor. The court balanced the aggravating and mitigating factors and found that the aggravators outweighed the mitigators.

■ Generally, sentencing is left to the sound discretion of the trial court, and this court will review sentencing only for abuse of discretion. *Sims v. State*, 585 N.E.2d 271, 272 (Ind.1992). For sentences permitted by statute, we will not revise the sentence unless it is manifestly unreasonable in light of the nature of the offense and character of the offender. Ind.Appellate Rule 17(B). A sentence is not manifestly unreasonable if a reasonable person could find the sentence appropriate to the particular offense and offender. *Grund v. State*, 671 N.E.2d 411, 418 (Ind.1996).

■ The trial court's discretion includes the ability to determine whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Boyd v. State*, 564 N.E.2d 519, 524 (Ind.1991). A court may enhance a presumptive sentence based upon a single aggravating circumstance. *Davidson v. State*, 558 N.E.2d 1077, 1092 (Ind.1990); *Sweany v. State*, 607 N.E.2d 387 (Ind.1993). As noted in Indiana Code § 35–38–1–7.1, the trial court can look at numerous aggravating factors to enhance the sentence, and the list is not exclusive. I.C. § 35–38–1–7.1(a–d).

■ In the case at bar, the trial court found two aggravating factors in its sentencing order, and the two plus a third in the sentencing hearing. First, the court stated that Appellant "is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility." (R. at 43, 123.) The trial court improperly

---

**6.** Because the same conclusion is reached under either rule of statutory construction, we need not decide which would prevail in a situation where contradictory conclusions exist.

**7.** The trial court originally stated, with Appellant's concurrence, that it would use the fifty-

year presumptive sentence. Later, Appellant argued that forty years was the proper presumption. The court never addressed this argument, and thus, we cannot be sure which presumption was used.

used this aggravator. The base question of this aggravator is "whether the defendant should be incarcerated for more than the presumptive term." *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind.1996). Similar to the situation in *Mayberry,* the trial court did not state any reasons why Appellant was in need of time in a penal institution in excess of the presumptive sentence.

■ The second aggravator found by the trial court was that Appellant had a criminal history. The court properly used this aggravator. First, Appellant's situation is similar to that of the defendant in *Pruitt v. State,* 622 N.E.2d 469 (Ind.1993). As in *Pruitt,* the trial court noted that Appellant admitted to a history of involvement with illegal substances. Furthermore, Appellant admitted to driving while intoxicated upwards of sixty times within a year, a series of acts which we would call criminal. *See Sweany,* 607 N.E.2d at 391 (holding that defendant's history of juvenile criminal activity and his abusive behavior to his wife were evidence enough of criminal history to support a sentence enhancement).

■ A final aggravator, the particularized circumstances of the crime, was enunciated in the sentencing hearing but not in the sentencing order. While a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, the court may look to the particularized circumstances of the criminal act. *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind.1994). To enhance a sentence in this manner, the trial court must detail why the defendant deserves an enhanced sentence under the particular circumstances. *Wethington v. State,* 560 N.E.2d 496, 509 (Ind. 1990). In the case at bar, the court stated:

> And [Appellant] is correct that the committing of the murder itself can't be used to enhance your sentence, but the Court is— can look at the surrounding circumstances and you had—you planned this murder for two or three days ahead of time. You thought about it, you planned it, you decided how you were going to do it, and you participated in that murder.

(R. at 120.) While this aggravator is generally thought to be associated with particular-

ly heinous facts or situations, the conclusion reached by the trial court was within its discretion. *See Bustamante v. State,* 557 N.E.2d 1313, 1322 (Ind.1990) (upholding as a proper aggravating circumstance the careful planning of a crime).

The trial court in the present case enhanced Appellant's presumptive sentence based upon two valid aggravators. The court only needed one. Furthermore, the court specifically stated the reasons why it found each of the two acceptable aggravating circumstances, and the court balanced the aggravating and mitigating circumstances in reaching its sentencing decision. In light of the nature of the offense and the evidence, the Appellant's enhanced sentence was not improper.

### CONCLUSION

The trial court was correct in its sentencing of the Appellant in all respects except for the use of a fifty-year presumptive sentence. Therefore, we affirm the conviction and remand to the trial court for a new sentencing statement consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.