Dwayne TAYLOR, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9611–CR–723.

Supreme Court of Indiana.

June 8, 1998.

Walter E. Bravard, Indianapolis, for Appellant.

1. Ind.Code § 35–42–1–1 (1993).

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

On September 7, 1995, defendant Dwayne Taylor pled guilty to Murder[1], a class A felony. On December 11, 1995, the trial court sentenced Taylor to 60 years in prison. The sole issue in this appeal is the propriety of the sentence. We affirm.

### Background

Defendant and Stephanie Penny maintained a romantic relationship for ten months but it came to an end in the late summer of 1994 at Penny's insistence. Approximately three months later, defendant set out to confront Penny. He went to her residence and, not finding her at home, determined to wait. He took a chair from her patio, broke into her storage shed, laid out bedding material, and tied a string from the inside of the shed door to the chair. There, armed with a handgun, defendant waited and watched for Penny through a small hole in the shed for what turned out to be twenty-one hours.

Penny returned home that evening. Her brother, Steven Davis, testified as to what happened next. That same evening, Davis delivered some furniture to his sister's residence. As he was unloading the furniture, he heard a shot. His sister ran past him followed by defendant. Davis attempted to stop defendant, but he broke free from Davis and continued to pursue Penny. Penny slipped and fell to the ground. After Davis heard his sister cry "no, Dwayne," he heard two or more shots. Davis ran into his sister's residence to check on his five year old niece and to call the authorities.

Defendant had confronted Penny and shot her in the face. Stephanie Penny died from her wounds. On September 7, 1995, after withdrawing his initial not-guilty plea, defendant pled guilty to the charge of Murder without the benefit of a plea agreement with the State.

Defendant asserts that his 60 year sentence is manifestly unreasonable because the

trial court (1) failed to provide justification for the cited aggravating circumstances, (2) relied on prior uncharged misconduct to enhance the sentence, and (3) failed to consider all mitigating circumstances. We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7).

### Discussion

 At the time this crime was committed, a murder offense carried a presumptive 40 year sentence, with not more than 20 years added for aggravating circumstances and not more than 10 years subtracted for mitigating circumstances. Ind.Code § 35–50–2–3 (Supp.1994).[2] It is within a trial court's discretion to determine whether an enhanced sentence is warranted based on aggravating or mitigating circumstances. *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996); *Sims v. State*, 585 N.E.2d 271, 272 (Ind.1992). When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind.1996)).

Master Commissioner Young presided over the sentencing hearing on November 7, 1995. After the hearing, the Master Commissioner recommended to Judge Magnus–Stinson that defendant serve a maximum sentence of sixty (60) years. At the sentencing hearing, the Master Commissioner explained the basis for the sentence as follows:

> I'll show that I accept the pre-sentence report's aggravating factors as being correct.[3] That there is a history of violent behavior. That there is a need for correc-

tional rehabilitative treatment that can best be provided by commitment to a penal facility. That I find the lying in wait as an aggravator. I think it has been admitted and proved that that's what happened. I think that imposition of a reduced sentence would depreciate the seriousness of the crime. In reviewing the statutory mitigating factors, I do believe it's a mitigator that you've expressed remorse and I think that your minimal criminal history is also a mitigator. But, I do not believe that those mitigators outweigh the premeditated, lying in wait, nature of this offense. And based upon that I'm going to find that the aggravating outweigh the mitigating factors in this case, impose the maximum sentence of sixty (60) years. . . .

(R. at 134–36). The Judge approved the Master Commissioner's recommendation.

### I

As is apparent from the court's statements, the court identified four specific aggravating circumstances. Defendant claims, however, that the trial court failed to provide sufficient justification for citing them.

### A

 Lying in wait is an aggravating circumstance that justifies an enhanced sentence. Lying in wait for a victim is a particularly serious aggravating circumstance because it demonstrates a heightened level of vindictiveness in the commission of a crime. In *Thacker v. State*, Justice DeBruler elaborated on the particular heinousness of a crime committed when the defendant lays in wait for the victim:

> In such a crime, there is considerable time expended in planning, stealth and anticipation of the appearance of the victim while poised and ready to commit an act of killing. Then, when the preparatory steps of the plan have been taken and the victim arrives and is presented with a diminished

---

**2.** In *Smith v. State*, we held that P.L. 158–1994, not P.L. 164–1994, governs sentences for murders committed between July 1, 1994 and May 5, 1995. *Smith v. State*, 675 N.E.2d 693, 695–97 (Ind.1996). The record demonstrates that the trial court properly followed P.L. 158–1994.

**3.** The presentence investigation report identified two aggravating factors which defendant does not appear to contest: defendant carefully planned the crime; and, defendant confronted the victim while committing the crime.

capacity to employ defenses, the final choice in the reality of the moment is made to act and kill. This aggravating circumstance serves to identify the mind undeterred by contemplation of an ultimate act of violence against a human being and, of equal importance, the mind capable of choosing to commit that act upon the appearance of the victim.

*Thacker,* 556 N.E.2d 1315, 1324–25 (Ind. 1990). In fact, the Indiana General Assembly has found lying in wait to be so egregious as to justify a sentence of death in certain circumstances. *See* Ind.Code § 35–50–2–9(a) & (b)(3) (Supp.1994).[4] We have construed this statutory aggravator as "deserving consideration for the penalty of death those who engage in conduct constituting watching, waiting and concealment with the intent to kill, and then choosing to participate in the ambush upon the arrival of the intended victim." *Thacker,* 556 N.E.2d at 1325. Accordingly, the presence of this aggravating circumstance in any murder is significant and warrants the consideration of an enhanced sentence.

■ Here, defendant carefully planned his attack on Penny. He took a chair and bedding and hid in Penny's storage shed. He waited for Penny for twenty-one hours. He watched for her through a small hole in the shed. Once Penny opened the door to the shed, "she was surprised to see him and ran." Defendant chased Penny, averted an attempt by her brother to subdue him, and confronted Penny before he shot her in the face and killed her. These actions are demonstrative of a "mind undeterred by contemplation of an ultimate act of violence against a human being and, of equal importance, the mind capable of choosing to commit that act upon the appearance of the victim." *Thacker,* 556 N.E.2d at 1325.

■ Although the non-capital sentencing statute does not specifically cite the lying in wait element of a crime as a separate aggravator, a court may consider the nature and circumstances of a crime to determine what

sentence to impose. Ind.Code § 35–38–1–7.1(a)(2) (Supp.1994). *See also Scheckel v. State,* 620 N.E.2d 681, 685 (Ind.1993) (the particularly heinous nature and circumstances of the crime were considered as an aggravator). Further, the manner in which a crime is committed can be considered as an aggravating circumstance. *Concepcion. v. State,* 567 N.E.2d 784, 791 (Ind.1991). *Accord Smith v. State,* 675 N.E.2d 693, 698 (Ind.1996) (defendant's planning of a crime may serve as an aggravating circumstance); *Bustamante v. State,* 557 N.E.2d 1313, 1322 (Ind.1990) (careful planning of a crime may serve as a proper aggravating circumstance).

The trial court's sentencing statement reflected the particular lying in wait circumstances of this crime. "Mr. Taylor everybody feel[s] pain, everybody feel[s] frustrated at some point. But, they don't go out and shoot people.... [T]hey don't sit and lay in wait for somebody." (R. at 131.) The court expressed its understanding that everyone may feel that life is "rotten;" but, "what you did was then to decide well, I'm gonna lay in wait and kill somebody." (R. at 132–33.) The trial court provided sufficient explanation for its reliance on the lying in wait nature of the crime as an aggravating circumstance in enhancing the presumptive sentence.

**B**

Defendant also asserts that the trial court erroneously relied on defendant's prior arrest as an aggravating circumstance. The presentence report revealed that defendant had a prior arrest for Criminal Recklessness. Defendant had been arrested for firing shots in a public housing area and apparently holding a gun to a former girlfriend's head. The charge had been dismissed because essential police and civilian witnesses failed to appear in court. The report also revealed that defendant had been involved in a domestic violence incident.

In its closing argument, the State focused on the "brutal" nature of the crime and de-

---

4. Ind.Code § 35–50–2–9 states, in relevant part: "The state may seek either a death sentence or a sentence of life imprisonment without parole for murder by alleging ... the existence of at least

one (1) of the aggravating circumstances listed in subsection (b)....(3) The defendant committed the murder by lying in wait." Ind.Code § 35–50–2–9(a) & (b)(3) (Supp.1994).

fendant's propensity to commit such a crime again. The State requested that the trial court impose the maximum sentence due to the brutality of the crime and defendant's past criminal activity.

> Your Honor the State is asking that nothing less [than] the maximum executed sentence of sixty (60) years be imposed because that's justified in this case.... [The sentencing statute states that] in determining what sentence to impose for a crime the court shall consider the risk the person may commit another crime, the nature and circumstances of the crime committed and the person's prior criminal history, character, and condition.... This defendant has a history, it may not be of convictions, but he does have a history of violent activity. And it is a history which reflects a likelihood of repetition. .... I'm referring to ... the occasions referred to in the presentence report where the defendant has used a gun previously and threatened women. I think it impacts upon him as an individual.

(R. at 118–21.)

Defendant contests the use of criminal activity as an aggravator because he has never been convicted of a crime. He argues that under such circumstances, a trial court may not consider arrests alone in order to enhance a presumptive sentence.

■ The trial court found that defendant had "a history of violent behavior." (R. at 134.) We have held that "[a]lthough a record of arrest, without more, may not be properly considered as evidence of prior criminal history, 'such information may be relevant to the trial court's assessment of the defendant's character in terms of risk that he will commit another crime.'" *Ealy v. State,* 685 N.E.2d 1047, 1058 (Ind.1997) (citations omitted). A trial court may evaluate "any other factor which reflects on the defendant's character, good or bad" when determining the appropriate sentence to impose. *Tunstill v. State,* 568 N.E.2d 539, 545 (Ind.1991). *See also* Ind.Code § 35–38–1–7.1(d) (Supp.1994)

(statutory list of aggravating circumstances is not exhaustive). Although we have stated that a defendant's arrest record alone cannot justify an enhanced sentence, it does not preclude a trial court from attributing to a defendant's arrest record the risk that defendant may commit a similar act in the future. *Accord Beason v. State,* 690 N.E.2d 277, 281 (Ind.1998) (allegations of prior criminal history need not be reduced to conviction to be considered a proper aggravating factor); *Scheckel,* 620 N.E.2d at 683; *Tunstill,* 568 N.E.2d at 545.

■ The trial court demonstrated sensitivity to these distinctions when it responded to the State's and defendant's respective arguments over the propriety of considering the arrest as an aggravating circumstance:

> I can look at charged and uncharged, ... and I can look at the cases in which he's charged and cases that were not brought down to conviction. But, I also think that the relative weight that I give to each one of those incidents. I give more weight to a conviction than I do an arrest and I give more weight to an arrest than I do to somebody just coming in and saying such and such happened and nothing else to substantiate it.

(R. at 122–23.) The trial court's focus on the defendant's behavior coupled with its prioritization of the relative weight assignable to different types of incidents appears to us to be an appropriate way to assess defendant's character. *See* Ind.Code § 35–38–1–7.1(a)(1) to (3) (Supp.1994).[5] The court also considered the defendant's minimal criminal *history,* evidenced by the absence of any prior criminal convictions, as a mitigating circumstance. Moreover, this was not the sole factor used to enhance defendant's sentence. We conclude that the trial court appropriately considered and weighed defendant's prior criminal activity in enhancing defendant's presumptive sentence.

---

**5.** The sentencing statute stipulates the following: "(a) In determining what sentence to impose for a crime, the court shall consider: (1) the risk that the person will commit another crime; (2)

the nature and circumstances of the crime committed; (3) the person's ... prior criminal record; ... character; and, ... condition...." *Id.*

### C

■ Defendant claims that the trial court improperly invoked the correctional and rehabilitative treatment aggravating circumstance. *See* Ind.Code § 35–38–1–7.1(b)(3) (Supp.1994). "[F]or this aggravating circumstance to justify in part an enhanced sentence, it must be understood to mean that the defendant is in need of correctional and rehabilitative treatment that can best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term." *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind.1996). *Accord Beason,* 690 N.E.2d at 281–82; *Battles v. State,* 688 N.E.2d 1230, 1236 (Ind.1997); *Hollins v. State,* 679 N.E.2d 1305, 1308 (Ind.1997); *Mitchem,* 685 N.E.2d at 679; *Smith,* 675 N.E.2d at 697–98; *Newhart v. State,* 669 N.E.2d 953, 955 (Ind.1996). We can infer from the record that the trial court believed that the defendant could be rehabilitated.[6] However, the trial court did not articulate how such rehabilitation could be achieved through imposition of an enhanced sentence rather than the presumptive sentence. We conclude that the trial court improperly applied this aggravating circumstance.

### D

■ Defendant also contends that the trial court improperly invoked the depreciate the seriousness of the crime aggravating circumstance. A trial court may consider that the imposition of a reduced sentence might reduce the seriousness of the crime. Ind. Code § 35–38–1–7.1(b)(4) (Supp.1994). However, we have consistently held that a trial court may apply this factor only when the court considers imposing a shorter sentence.

*Mitchem,* 685 N.E.2d at 679; *Bacher v. State,* 686 N.E.2d 791, 801 (Ind.1997); *Jones,* 675 N.E.2d at 1088; *Mayberry,* 670 N.E.2d at 1270; *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995); *Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994).[7] The record does not reflect that the court considered reducing the sentence recommended by the State. We conclude that the use of this aggravating factor was improper.

### II

■ The finding of significant mitigating circumstances rests within the discretion of the trial court. *See Battles,* 688 N.E.2d at 1236; *Jones,* 675 N.E.2d at 1088 (citations omitted); *Widener,* 659 N.E.2d at 534. Defense counsel presented the following mitigating factors to the court: (1) defendant did not have a criminal record, (2) defendant cooperated with the authorities—he turned himself and the hand gun over to the police, and gave a full confession, and (3) defendant expressed remorse. The record reflects that the trial court acknowledged the "cooperation" mitigator, but dismissed it as a significant mitigator because defendant's cooperation was "after the fact."[8] The trial court did accept two of the mitigators that defendant presented: defendant's minimal criminal history and his remorsefulness. The record shows that the trial court heard the mitigating factors presented by defendant, carefully considered them, and then found two of the mitigating circumstances to be significant.

■ Although the trial court improperly applied two of the aggravating factors,

---

6. The trial court may have alluded to the ability of defendant to rehabilitate: "And you know Mr. Taylor I think that, quite honestly, that … from what I've read in these reports and from the life that you [led] before, that the most punishment is going to come from yourself as you think about it every day." (R. at 136.)

7. We have also held that an alternate form of this aggravator exists when a sentence less than the enhanced term may also depreciate the seriousness of the crime. *Evans v. State,* 497 N.E.2d 919, 923–24 (Ind.1986). We conclude that the record does not support the alternate form of this aggravator.

8. The trial court commented on defendant's cooperation with authorities. "Yes you, after the fact cooperated. And yes you made statements and fully admitted your involvement in this case." (R. at 134.) Defendant contends that these circumstances would naturally have to be "after the fact"—after the crime was committed. The record supports the trial court's "after the fact" finding: (1) a warrant was issued for defendant's arrest; (2) defendant was arrested almost one month after the crime was committed; (3) defendant pled not-guilty after the arrest and then, nine months later, defendant pled guilty without the benefit of a plea agreement.

we find that the court engaged in a weighing and balancing of the aggravating and mitigating factors. Despite a trial court's improper application of an aggravating circumstance to enhance a sentence, "this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed." *Scheckel,* 620 N.E.2d at 684 (citations omitted). Here, the lying in wait aggravating circumstance falls within the highest range of aggravation and is adequate to support the sentence imposed. We find no error in the trial court's enhancement of defendant's sentence.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.