**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID W. ZENT**
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUAN DE DIOS OROZCO-MITCHEL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1107-CR-365 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Kenneth R. Scheibenberger, Judge
Cause No. 02D04-0306-FA-32

**May 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Juan de Dios Orozco-Mitchel appeals his thirty-five year sentence for Class A felony conspiracy to deal in cocaine or narcotic drug.[1]  He argues the trial court abused its discretion by failing to give credit for mitigating circumstances and by finding improper aggravating circumstances.  He also argues his sentence is inappropriate.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

Between May 2003 and June 16, 2003, Orozco-Mitchel was involved in two transactions in which a confidential informant ("CI") transported cocaine from Arizona to Fort Wayne, Indiana.  For both of those transactions, Orozco-Mitchel provided the mini-van used to transport the cocaine and instructions for delivering the cocaine to a residence in Fort Wayne.

Federal Drug Enforcement Agency agents and Kansas State Highway Patrol officers eventually arrested Orozco-Mitchel at the Fort Wayne residence.  During the subsequent search of the residence, officers uncovered nine individually wrapped bricks of cocaine with a combined weight of 5.6 kilograms.  They also found sealed plastic bags with just over one kilogram of marijuana, approximately $130,980 in bundles of wrapped stacks of money, a Beretta 9mm handgun, a Nissan Pathfinder with a hidden compartment in the gas tank, and bags consistent with those used for packaging and dealing cocaine.

On June 23, 2003, the State charged Orozco-Mitchel with Class A felony conspiracy to commit dealing in cocaine or narcotic drug, Class A felony dealing in

---

[1] Ind. Code § 35-48-4-1(b)(1); Ind. Code § 35-41-5-2.

cocaine or narcotic drug,[2] Class C felony money laundering,[3] Class D felony money laundering,[4] and Class D felony possession of marijuana hash oil or hashish.[5]  On December 8, 2003, pursuant to a plea agreement, Orozco-Mitchel pled guilty as charged to Class A felony conspiracy to commit dealing in cocaine or narcotic drug, and in exchange, the State dropped the other charges against him.  The plea agreement capped the amount of time the court could order executed in the Department of Correction at thirty-five years.

The pre-sentencing investigation revealed Orozco-Mitchel, an illegal immigrant, was deported from the United States in 1997 as part of sentencing for a prior drug-related offense.  Orozco-Mitchel has three different identities on record, three different birth dates, and two prior felony convictions, both for attempted distribution of a controlled substance.

At the sentencing hearing, Orozco-Mitchel acknowledged the evidence against him was "overwhelming."  (Sent. Tr. at 14.)  The trial court rejected Orozco-Mitchel's argument that he deserved a sentence shorter than the presumptive because he was just an "unimportant mule"[6] and because it would not send a message to other like-minded individuals.  (*Id.* at 15.)  The trial court indicated setting an example is not an appropriate factor to consider in sentencing.  It found aggravating circumstances in Orozco-Mitchel's

---

[2] Ind. Code § 35-48-4-1(b)(1).
[3] Ind. Code § 35-45-15-5(a)(3)(A).
[4] Ind. Code § 35-45-15-5(a).
[5] Ind. Code § 35-48-4-11.
[6] The trial court interpreted the term "mules" to refer to individuals recruited to title the vehicles used to transport the drugs, in order to avoid suspicion in the event of traffic stops.  (Sent. Tr. at 8.)

record of prior drug-related offenses, the fact that prior attempts at rehabilitation had failed, and in Orozco-Mitchel having a large amount of cash at the residence and thousands of times the amount of cocaine required for a Class A felony charge.[7] The trial court stated such a large amount of cocaine "contributes in a very large way to the violent crime that we have in our community." (*Id*. at 20.) The trial court specifically declined to find Orozco-Mitchel's age, twenty-four years, as a mitigating factor because this was "his third distribution" and "even if there was a mitigator on age, that [would not] outweigh the aggravators." (*Id*.)

The trial court accordingly accepted the plea agreement, which capped the possible executed portion of Orozco-Mitchel's sentence at thirty-five years. In light of the aggravating factors, the trial court imposed a sentence of thirty-five years executed in the Department of Correction.

## DISCUSSION AND DECISION

1.    Abuse of Discretion Analysis

Orozco-Mitchell first asserts the trial court abused its discretion in sentencing him. We are not convinced an abuse of discretion occurred.

The trial court sentenced Orozco-Mitchel on December 29, 2003.[8] Prior to 2005,

---

[7] *See* Ind. Code § 35-48-4-1(b)(1) (elevating the offense of dealing in cocaine or narcotic drug to a Class A felony if "the amount of the drug involved weighs three (3) grams or more").

[8] On Feb. 4, 2008, Orozco-Mitchel filed a *pro se* Verified Petition for Post-Conviction Relief. Thereafter, a number of different attorneys were assigned to him. On December 10, 2010, Orozco-Mitchel, through counsel, filed a Verified Motion for Permission to File Belated Notice of Appeal. On July 13, 2011, he filed a Petition for Authority to File Belated Notice of Appeal, which the trial court granted the following day. Orozco-Mitchel filed his Notice of Appeal on July 19, 2011.

4

Indiana's statutory sentencing framework had a "presumptive" sentence prescribed by the legislature for each class of crime. *Harris v. State*, 897 N.E.2d 927 (Ind. 2008). The presumptive sentence was the starting point for a sentence in that class of crime, and then a sentencing court had limited discretion to enhance or reduce a sentence based on a particular defendant's aggravating circumstances or mitigating circumstances. *Id.* Under this framework, the trial court was required to identify significant aggravating and mitigating circumstances, give a reason why each circumstance was aggravating or mitigating, and demonstrate balancing of those circumstances. *See Gregory v. State*, 604 N.E.2d 1240, 1241 (Ind. Ct. App. 1992).

Following *Blakely v. Washington*, 542 U.S. 296 (2004), *reh'g denied*, our Indiana Supreme Court held Indiana's presumptive sentencing scheme was unconstitutional. *Smylie v. State*, 823 N.E.2d 679, 685 (Ind. 2005). In response, our Indiana General Assembly amended the sentencing statutes in 2005 by replacing fixed presumptive terms with "advisory" sentences. Pursuant thereto, a court could impose any sentence within the statutory range set for the class of crimes, "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind. Code § 35-38-1-7.1(d) (2005). Under this scheme, if aggravating or mitigating circumstances are found, a trial court must provide a statement including its reasons for imposing a particular sentence. *Harris*, 897 N.E.2d at 928.

The date on which a crime is committed determines the sentencing scheme the trial court must apply, because the sentencing statute in effect at the time a crime is

5

committed governs the sentence for that crime. *Id.* at 928-29. Orozco-Mitchel committed his crime before Indiana adopted the new sentencing structure to comply with *Blakely*; therefore, the presumptive sentencing scheme applies. *See Smith v. State*, 675 N.E.2d 693, 695 (Ind. 1996) (sentencing statute in effect at the time of the crime governs sentencing).

Under the presumptive sentencing scheme, "sentencing is left to the sound discretion of the trial court, [and] this court will review sentencing only for abuse of discretion." *Id.* at 697. Thus, we give considerable deference to the trial court's judgment. *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996). Further, the "trial court's discretion includes the ability to determine whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances." *Id.* There is no requirement dictating the number of aggravating or mitigating factors a trial court must consider, nor is there a formula for what specific aggravating factors may be considered in addition to those appearing in Ind. Code § 35-38-1-7.1. *Id.* Further, the court can "enhance a presumptive sentence based upon a single aggravating circumstance." *Id.*

Ind. Code § 35-50-2-4 (2003) set the presumptive sentence for a Class A felony at thirty years, with an option to increase up to twenty more years or decrease by up to ten years. The trial court found three aggravators and no mitigators, weighed the aggravating and mitigating factors, and imposed thirty-five years executed, which was the maximum executed time permitted by the plea agreement.

6

The first aggravating factor found was that prior attempts at rehabilitation had failed, as evidenced by Orozco-Mitchel's commission of this crime after being punished for two prior drug-related offenses. Prior failed attempts at rehabilitation and a prior arrest record that includes crimes identical to the present offense are legitimate aggravators, because the trial court may consider them "reflective of the defendant's character and as indicative of the risk that the defendant will commit other crimes in the future." *Cox v. State*, 780 N.E.2d 1150, 1157 (Ind. Ct. App. 2002).

Additionally, although the court did not explicitly consider the particular amount of drugs found to be an aggravating circumstance, at the sentencing hearing the trial judge did take special note of the major discrepancy between the three grams of cocaine required for a conviction of Class A Felony dealing and the nine *kilograms* -- more than 3,000 times what is necessary for the Class A charge -- that were found here. Regarding the amount of drugs found at the arrest site, Indiana courts have stated this is an inappropriate aggravating factor where the amount of cocaine involved is an element of the offense. *Carlson v. State*, 716 N.E.2d 469, 472-73 (Ind. Ct. App. 1999) (defendant's possession equaling three grams or more "could not be properly used as an aggravator with which to enhance the defendant's sentence" where defendant had pled guilty to the included offense of Class A felony dealing in cocaine).

However, the "'nature and circumstances' of a crime is a proper aggravator." *Henderson v. State*, 769 N.E.2d 172, 180 (Ind. 2002). "While a trial court may not use a factor constituting a material element of an offense as an aggravating circumstance, . . . a

7

court may look to the particularized circumstances of the criminal act." *Id. See also Morgan v. State*, 975 N.E.2d 1067, 1073 (Ind. 1996) ("particularized circumstances of a criminal act may constitute separate aggravating circumstances"). Here, the trial court, when addressing the fact that the amount of cocaine far outweighs what statutorily constitutes a Class A felony, referred to the particularized circumstances in this case. This is supported by statements the trial court made in response to the parties' disagreement over whether the weight of drugs involved may be properly considered an aggravator. Specifically,

> I'm not sure I even have to go through all these gyrations [regarding whether the amount of cocaine is an appropriate aggravating factor,] given the fact that there's a cap of [thirty-five years. But we are dealing with an amount that is over the statutory weight by a factor of a thousand and] . . . certainly this amount of cocaine contributes in a very large way to the violent crime that we have in our community right now.

(Sent. Tr. at 20.) We are not convinced that the trial court abused its discretion by considering the nature and circumstances of this crime, including the fact that Orozco-Mitchel was in possession of 3,000 times the amount of cocaine necessary to be charged with a Class A felony, as an aggravator.

As to the mitigating factors, "[t]rial courts should be 'inherently aware of the fact that a guilty plea is a mitigating circumstance.'" *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011) (quoting *Francis v. State*, 817 N.E.2d 235, 237 n.2 (Ind. 2004)). However, "a guilty plea is not always a *significant* mitigating circumstance." *Id.* (emphasis added). At the sentencing hearing, the trial court acknowledged Orozco-

8

Mitchel's guilty plea by stating "no doubt [Orozco-Mitchel] was . . . finessed . . . to [admit to his wrongdoings]." (Sent. Tr. at 18.) Thus the court did not overlook this factor.

The trial court also considered the possibility of finding a mitigator in Orozco-Mitchel's age being twenty-four years, but the court ultimately declined because this was Orozco-Mitchel's third conviction of drug distribution. The trial court concluded, "I don't find any mitigators and even if there was a mitigator . . . that wouldn't outweigh the aggravators." (*Id.* at 21.)

Orozco-Mitchel has not demonstrated the court abused its discretion.

2.      Inappropriate Sentencing Analysis

Orozco-Mitchel next argues his sentence was inappropriate in light of the nature of the offense and his character. We disagree.

An appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In our review, "we must and should exercise deference to a trial court's sentencing decision . . . ." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). "The defendant has the burden of persuading us that his sentence is inappropriate." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

The trial court noted Orozco-Mitchel is an illegal immigrant. Additionally, his sentence for one of two past convictions involving "drugs, conspiracy to distribute,

9

attempt at distribution or arranging to distribute a controlled substance" included deportation, which he had violated by returning to the United States. (Sent. Tr. at 18.)

> In *Samaniego-Hernandez v. State*, we said: "[B]eing an illegal alien is itself more properly viewed as an aggravator than as a mitigator. *See*, *e.g.*, *Yemson v. United States*, 764 A.2d 816, 819 (D.C. 2001) (in sentencing a criminal defendant, court cannot treat defendant more harshly than any other citizen solely due to his national origin or alien status, but that does not mean that court must close its eyes to defendant's illegal alien status *and disregard for the law, including immigration laws).*"

*Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008) (emphasis in original) (quoting *Samaniego-Hernandez v. State*, 839 N.E.2d 798, 806 (Ind. Ct. App. 2005)).

Orozco-Mitchel concedes the nature of his offense is serious and states he does not wish to diminish that fact on appeal. The trial court also stated this offense involves an amount of drugs that far exceeds what is required to elevate the offense to a Class A felony and "contributes in a very large way to the violent crime that we have in our community now." (Sent. Tr. at 20.)

Regarding Orozco-Mitchel's character, we are not convinced his tenth grade education or his immigrant status justify a more lenient sentence. Orozco-Mitchel is an *illegal* immigrant who was previously deported for a crime involving drugs. His illegal return to the United States, in violation of his probation sentence from a previous drug-related crime, does not reflect well on his character.

In light of the above analysis, we cannot find a thirty-five year sentence inappropriate.

10

**CONCLUSION**

The trial court was justified in its enhancement of Orozco-Mitchel's presumptive sentence, which remained in accord with the plea agreement. Further, we are not convinced Orozco-Mitchel's sentence is inappropriate in light of his character and the nature of his offense. Accordingly, we affirm.

Affirmed.

CRONE, J., and BROWN, J., concur.